PEEPLES v CITY OF DETROIT

Docket No. 44364. Submitted January 8, 1980, at Detroit.—Decided April 2, 1980. Rehearing granted May 9, 1980. Opinion on rehearing filed August 11, 1980.

Leandrew Peeples filed suit against the City of Detroit and Waterford Construction Company to recover for injuries sustained when he fell from a scaffold. Plaintiff's complaint alleged negligence on the part of Waterford in failing to exercise due care, to observe safety precautions, to warn of hazards, failure to provide guardrails and other safety devices. At the time of the accident, plaintiff was employed by a subcontractor, Domar Systems, Inc. The accident occurred on premises owned by the City of Detroit with Waterford Construction Company acting as the general contractor. Defendants City of Detroit and Waterford filed a third-party complaint against Domar, alleging contractual and common-law indemnity. The City of Detroit was dismissed from the action on the ground of governmental immunity. Waterford filed a motion for summary judgment based on contractual and common-law indemnity with a separate ground for breach of contract based on Domar's failure to provide the requisite insurance on behalf of Waterford. Summary judgment granted. The trial court also allowed Waterford to amend its third-party complaint to include a breach of contract based on Domar's failure to provide insurance, Wayne Circuit Court, Michael J. Talbot, J. A settlement with the plaintiff was reached but the rights between Domar, third-party

REFERENCES FOR POINTS IN HEADNOTES

[1] 41 Am Jur 2d, Indemnity § 1.
[2, 3] 41 Am Jur 2d, Indemnity §§ 1, 15.
[4, 12] 73 Am Jur 2d, Summary Judgment § 27.
[5, 6, 9] 41 Am Jur 2d, Indemnity § 13 *et seq.*
[7, 12] 41 Am Jur 2d, Indemnity § 10.
  Liability of subcontractor upon bond or other agreement indemnifying general contractor against liability for damage to person or property. 68 ALR3d 7.
[8] 41 Am Jur 2d, Indemnity § 15.
[10] 61 Am Jur 2d, Pleading § 305 *et seq.*
[11] 29 Am Jur 2d, Evidence §§ 452, 486.

defendant, and Waterford, third-party plaintiff, were preserved. Domar appeals. The issues on appeal deal primarily with common-law indemnity, contractual indemnity and breach of the alleged insurance agreement. *Held:*

1. A party seeking common-law indemnity must be free from active or causal negligence. The record indicates disputed questions of fact regarding Waterford's responsibility for safety on the job site and whether Waterford undertook responsibility for supervision and safety inspections. Therefore, further factual development is needed to determine whether Waterford was actively negligent. The trial court erred in granting Waterford's motion for summary judgment on its third-party action for common-law indemnification.

2. A contract of indemnity will not be construed to indemnify the indemnitee against losses which are the result of his own negligence unless such intention is expressed in clear and unequivocal terms. The contractual indemnity provision does not unequivocally indemnify Waterford for its own acts of negligence, so the circumstances and intent of the parties must be further explored at trial.

3. An indemnification provision in a construction contract governs, unless the contract clearly provides otherwise. The fact that there is an insurance requirement does not enlarge or alter the scope of the indemnity agreement where the insurance provisions do not contain an indemnification clause. The insurance provision in the general contract did not contain a separate promise of indemnity. The trial court erred in granting summary judgment on that basis, although it may be the basis for a separate claim for breach of contract.

4. Domar's contention that the trial court erred when it allowed Waterford to amend its pleadings on the first day of trial to include the additional count involving the insurance provision is unpersuasive. A motion to amend should ordinarily be granted, absent factors such as undue delay, bad faith, dilatory motives, or unless the opponent would be unduly prejudiced by the amendment. The record does not indicate that Domar was prejudiced or surprised as Domar was aware of the existence of this claim.

5. Domar complains that the copy of the contract which Waterford submitted with its motion for summary judgment was not the original, nor was it properly authenticated. Copies are admissible unless a genuine question is raised as to the authenticity of the original or in circumstances where it would be unfair to admit the duplicate in lieu of the original. Domar never introduced any evidence questioning the authenticity of

the contract or the copy submitted. Under these circumstances, admission of the copy was proper.

Reversed and remanded.

On Rehearing

Subsequent to the release of the Court of Appeals opinion in this matter, but before publication of that opinion, Waterford Construction Company, Inc., filed a motion for rehearing. The Court of Appeals granted the motion for rehearing and, on its own motion, withheld publication of its opinion pending a determination on the rehearing. Upon the filing of the Court's opinion on rehearing, the original opinion was released for publication.

On rehearing, Waterford argued that: the trial court considered the breach by Domar Systems (Indiana), Inc., of its contractual obligation to provide liability insurance for the benefit of Waterford as an independent basis for granting Waterford's motion for summary judgment; under the unambiguous terms of the insurance procurement agreement with Domar, Waterford's measure of damages against Domar for Domar's breach of its obligation to provide insurance is an amount equal to the insurance which Domar agreed to procure plus all defense costs and expenses; and, accordingly, summary judgment was properly granted by the trial court. On rehearing the Court of Appeals *held:*

The Legislature has declared, as a matter of public policy, that any construction industry agreement which would absolve one party from liability for that party's sole negligence is void and unenforceable. An agreement whereby a subcontractor must procure insurance for a general contractor's sole negligence would contravene that expression of the public policy of this state; thus, such an agreement would be unenforceable. Since the question of the extent of Waterford's negligence must be determined as a question of fact, summary judgment on the basis of any breach by Domar of the liability insurance agreement would not be an appropriate vehicle to dispose of the case. The Court of Appeals, therefore, adheres to its prior determination and remands the matter to the trial court for a trial.

1. INDEMNITY — EQUITY — RIGHT TO RESTITUTION — INNOCENT PAR-
    TIES — WRONGFUL ACTS — SPECIAL RELATIONSHIP — RECOVERY.

   Indemnification rests upon the equitable principle of a right to restitution; the theory of indemnity is that where the wrongful act of one results in liability being imposed upon another the innocent party may have indemnity from the person actually

guilty of the wrong, and before recovery is permitted there must be a special relationship between the primary defendant and the third-party defendant, whether based on employment, bailment or other factual situation, that permits recovery.

2. INDEMNITY — COMMON-LAW INDEMNITY — FREEDOM FROM NEGLI-GENCE — PLEADING.

A party seeking common-law indemnity must plead and prove freedom on his part from personal fault; the party must be free from active or causal negligence and if the indemnitee's own negligence played a role in an injury he may not recover.

3. INDEMNITY — COMMON-LAW INDEMNITY — ACTIVE NEGLIGENCE — PRIMARY PLAINTIFF'S COMPLAINT — DERIVATIVE LIABILITY.

Common-law indemnity is available only if the party seeking it is not actively negligent; the court looks at the primary plaintiff's complaint in determining this, and if the complaint alleges active negligence, as opposed to derivative liability, the defendant is not entitled to common-law indemnity.

4. MOTIONS — SUMMARY JUDGMENT — MATERIAL FACT ISSUE — EVIDENCE — COURT RULES.

A trial court must consider the pleadings, affidavits, depositions, admissions, and other documentary evidence in passing on a motion for summary judgment which is based on a lack of any genuine issue as to any material fact and before summary judgment may properly be granted, the court must be satisfied that it is impossible for the claim asserted to be supported by evidence at trial (GCR 1963, 117.2[3]).

5. CONTRACTS — INDEMNITY — CONTRACTUAL INDEMNITY — INTENT OF PARTIES — FREEDOM FROM FAULT.

Indemnity contracts, like other contracts, are to be enforced so as to effectuate the intentions of the parties; freedom from fault, which is necessary in common-law indemnity, is not required for a recovery on the basis of contractual indemnity.

6. INDEMNITY — CONTRACTS — CONSTRUCTION OF CONTRACTS.

Indemnity contracts are construed most strictly against the party who drafts them and against the party who is the indemnitee; in ascertaining the intentions of the parties not only the language used in the contract but also the situation of the parties and the circumstances surrounding the contract must be considered.

7. INDEMNITY — CONSTRUCTION CONTRACTS — PERSONAL LIABILITY — PROPERTY DAMAGE — PUBLIC POLICY — STATUTES.

An indemnity provision in a construction contract which seeks to protect the promisee from liability for personal or property damage arising from the sole negligence of the promisee is void as against public policy (MCL 691.991; MSA 26.1146[1]).

8. INDEMNITY — CONTRACTS — NEGLIGENCE — CONSTRUCTION OF CLAUSES — INTENT OF PARTIES.

A contract of indemnity will not be construed to indemnify the indemnitee against losses which are the result of his own negligence unless such intention is expressed in clear and unequivocal terms.

9. INDEMNITY — INDEMNITY PROVISIONS — SCOPE OF LIABILITY — INSURANCE — INDEPENDENT INDEMNIFICATION CLAUSES.

The scope of liability in a construction contract containing an indemnification provision is governed by that provision, unless the contract clearly provides otherwise; the fact that there is an insurance requirement does not enlarge or alter the scope of the indemnity agreement where the insurance provisions do not contain an independent indemnification clause.

10. PLEADING — AMENDMENTS — JUDGE'S DISCRETION — PREJUDICE — COURT RULES.

A court rule provides that leave to amend pleadings shall be freely given when justice so requires; a trial court's decision to allow or disallow an amendment to pleadings will not be reversed unless there has been an abuse of discretion; a motion to amend should ordinarily be granted absent factors such as undue delay, bad faith, dilatory motives on the part of the movant, or unless the opponent would be unduly prejudiced by the amendment (GCR 1963, 118.1).

11. CONTRACTS — DUPLICATE COPIES — ADMISSIBILITY — RULES OF EVIDENCE.

A copy of a contract is admissible in evidence to the same extent as the original unless a genuine question is raised as to the authenticity of the original or in circumstances where it would be unfair to admit the duplicate in lieu of the original (MRE 1003).

### ON REHEARING

12. INDEMNITY — CONSTRUCTION CONTRACTS — PERSONAL LIABILITY — PUBLIC POLICY — INSURANCE — SUMMARY JUDGMENT — STATUTES.

An agreement whereby a subcontractor must procure insurance

for a general contractor's sole negligence is contrary to the Legislature's statutory expression of public policy that construction industry agreements which absolve a party from liability for its sole negligence are void and unenforceable; accordingly, where the extent of a contractor's negligence remains to be determined as a question of fact, summary judgment based upon a subcontractor's failure to procure insurance is not an appropriate vehicle by which to resolve the question of whether the subcontractor must indemnify the contractor by reason of the failure to procure the insurance (MCL 691.991; MSA 26.146[1]).

*Harvey, Kruse & Westen, P.C.* (by *Richard A. Harvey* and *Michael F. Schmidt),* for the City of Detroit and Waterford Construction Company, Inc.

*Vandeveer, Garzia, Tonkin, Kerr & Heaphy, P.C.* (by *James K. Thome),* for Domar Systems (Indiana), Inc.

Before: R. M. MAHER, P.J., and M. F. CAVANAGH and CYNAR, JJ.

R. M. MAHER, P.J. The plaintiff, Leandrew Peeples, filed suit against the City of Detroit and Waterford Construction Company to recover for injuries incurred on June 25, 1974. At the time of the accident, the plaintiff was employed by the third-party defendant, Domar Systems (Indiana), Inc., hereinafter Domar. The accident occurred on premises owned by the City of Detroit, with Waterford Construction Company (hereinafter Waterford) acting as the general contractor.

Domar, the subcontractor, was engaged in the construction of a Domar Salt Storage Unit on the property. Plaintiff's alleged injury occurred when he fell from a scaffold which had been provided and assembled by Domar. Plaintiff's complaint alleged negligence on the part of Waterford in failing to exercise due care for plaintiff's safety;

failure to observe safety precautions and statutes; failure to warn of hazards associated with the use of scaffolding; and failure to provide guardrails and other safety devices.

On April 7, 1975, the defendants City of Detroit and Waterford filed a third-party complaint against Domar, alleging contractual and common-law indemnity. On January 19, 1978, the City of Detroit was dismissed from this suit pursuant to a motion for summary judgment based on governmental immunity.

On May 1, 1978, Waterford brought a motion for summary judgment under GCR 1963, 117.2(3), based on contractual and common-law indemnity. The motion was denied on June 6, 1978, without prejudice, "there being factual issues to be determined upon further discovery".

On February 21, 1979, the morning of the trial on the third-party action, Waterford renewed its motion for summary judgment alleging the same grounds as before. Additionally, Waterford alleged a separate ground of breach of contract based on Domar's failure to provide the requisite insurance on behalf of Waterford. The trial court granted Waterford's motion for summary judgment on the grounds of contractual indemnity, common-law indemnity, and the failure to provide insurance. The trial court also allowed Waterford to amend its third-party complaint to include the breach of contract allegation.

Domar filed an application to this Court for emergency appeal and superintending control, a motion for stay of proceedings, and a motion for immediate consideration. The motion for immediate consideration was granted on February 22, 1979, but the applications for emergency leave and for a stay of proceedings were denied.

A settlement with the primary plaintiff was reached on March 5, 1979, preserving the rights as between Domar and Waterford, which are the subjects of this appeal by Domar.

I. COMMON-LAW INDEMNITY.

Indemnification rests upon the equitable principle of a right to restitution. The theory of indemnity is that where the wrongful act of one results in liability being imposed upon another, the innocent party may have indemnity from the person actually guilty of the wrong. *Provencal v Parker,* 66 Mich App 431, 435; 239 NW2d 623 (1976). There must be a special relationship between the primary defendant and the third-party defendant —whether based on employment, bailment or other factual situation—that permits recovery. *Diekevers v SCM Corp,* 73 Mich App 78, 81; 250 NW2d 548 (1976).

Common-law indemnity is intended only to make whole again a party held vicariously liable to another through no fault of his own. This has been referred to as "passive" rather than "causal" or "active" negligence. *Dale v Whiteman,* 388 Mich 698, 705; 202 NW2d 797 (1972). Thus, one seeking indemnification at common law is required to plead and prove freedom from personal fault. *McLouth Steel Corp v A E Anderson Construction Corp,* 48 Mich App 424, 430; 210 NW2d 448 (1973), *Husted v Consumers Power Co,* 376 Mich 41, 51; 135 NW2d 370 (1965). If the indemnitee's own negligence played a role in the injury, he may not recover. *Wilhelm v Detroit Edison Co,* 56 Mich App 116, 157; 224 NW2d 289 (1974). The rationale for this requirement is that liability should fall on the party best situated to adopt preventive measures. *Dale v Whiteman, supra.*

In order to determine whether the indemnitee

was "actively" or "passively" negligent, the Court looks to the primary plaintiff's complaint. If that complaint alleges "active" negligence, as opposed to derivative liability, the defendant is not entitled to common-law indemnity. *Hill v Sullivan Equipment Co,* 86 Mich App 693, 696-697; 273 NW2d 527 (1978), *Minster Machine Co v Diamond Stamping Co,* 72 Mich App 58, 63-64; 248 NW2d 676 (1976), *Diekevers v SCM Corp, supra.*

In the case at bar, the primary plaintiff alleged in his amended complaint that Waterford was negligent because it failed to provide safety equipment, failed to conform to industry standards of due care, and failed to warn of the hazards of using a scaffold without safety devices. These allegations, if true, would make Waterford actively negligent.

However, in passing on a motion which is based on GCR 1963, 117.2(3), the trial court must consider the pleadings, affidavits, depositions, admissions, and other documentary evidence then available to it. Before summary judgment may properly be granted, the court must be satisfied that it is impossible for the claim asserted to be supported by evidence at trial. *Sullivan v The Thomas Organization, PC,* 88 Mich App 77, 85-86; 276 NW2d 522 (1979), *Rizzo v Kretschmer,* 389 Mich 363; 207 NW2d 316 (1973). Thus, the trial court was not limited to considering the primary plaintiff's pleadings, and properly considered all of the evidence presented in order to decide Waterford's motion.

In the instant case, in ruling on Waterford's common-law indemnity claim, the trial court stated that there was no dispute on the facts presented, only a disagreement on questions of law. The trial court found that under the contract

between Domar and Waterford, Domar had undertaken the responsibility for maintaining the premises in a reasonably safe condition. The scaffold in question was supplied by Domar. The work site was under Domar's exclusive control. Waterford alleged that it did not undertake safety inspections, nor did it closely supervise Domar's work site. Therefore, the trial court concluded that Domar's failure to take proper precautions caused the injury to the primary plaintiff, and Waterford was merely a passive tortfeasor in failing to discover Domar's negligence.

We cannot say that there was no disputed question of fact as to Waterford's responsibility for safety on the job site. In their depositions, two key Waterford employees acknowledged that Waterford held safety meetings for the other subcontractors and their employees. Furthermore, there is a disputed question of fact, based on the contract between Waterford and the City of Detroit, as to whether Waterford undertook responsibility for supervision and safety inspections. Therefore, we would find that summary judgment based on common-law indemnity was improper.

II. CONTRACTUAL INDEMNITY.

Waterford has a separate claim for indemnity. In the instant case, an express indemnity clause was contained in the contract between Waterford and Domar. Freedom from fault is not required for a recovery on the basis of contractual indemnity. *Nanasi v General Motors Corp,* 56 Mich App 652, 659; 224 NW2d 914 (1974).

Indemnity contracts, like other contracts, are to be enforced so as to effectuate the intentions of the parties. *Gartside v Young Men's Christian Ass'n,* 87 Mich App 335, 339; 274 NW2d 58 (1978). In ascertaining the intentions of the parties, one

must consider not only the language used in the contract, but also the situation of the parties and the circumstances surrounding the contract. *Gartside, supra.* Indemnity contracts are construed most strictly against the party who drafts them, and against the party who is the indemnitee. *Gartside, supra, Fireman's Fund American Ins Cos v General Electric Co,* 74 Mich App 318; 253 NW2d 748 (1977).

In the building and construction industry, public policy, as expressed by MCL 691.991; MSA 26.1146(1), prohibits an indemnitee from recovering for his sole negligence. This statute provides:

"Sec. 1. A covenant, promise, agreement or understanding in, or in connection with or collateral to, a contract or agreement relative to the construction, alteration, repair or maintenance of a building, structure, appurtenance and appliance, including moving, demolition and excavating connected therewith, purporting to indemnify the promisee against liability for damages arising out of bodily injury to persons or damage to property caused by or resulting from the sole negligence of the promisee or indemnitee, his agents or employees, is against public policy and is void and unenforceable."

Thus, as a matter of public policy, the indemnitor is not liable even if the contract specifically provides for indemnity for the indemnitee's negligence, unless the indemnitor is also negligent. *Nanasi, supra, Robertson v Swindell-Dressler Co,* 82 Mich App 382, 399; 267 NW2d 131 (1978). Apparently, however, this policy does not preclude clauses providing for indemnification for one's sole negligence in other areas, such as in a lease or bailment situation. See *Klann v Hess Cartage Co,* 50 Mich App 703, 706; 214 NW2d 63 (1973), *Gartside, supra.*

A general rule of contract law is that a void section of an otherwise valid provision can be severed if it is not an essential part of the whole. 2 Restatement, Contracts, § 607, *Robertson v Swindell-Dressler, supra.* Thus, an indemnity provision which purported to indemnify a party for his sole negligence could be severed, and the remainder of the contract given its intended effect.

It is well-settled that a contract of indemnity will not be construed to indemnify the indemnitee against losses which are the result of his own negligence,[1] unless such intention is expressed in clear and unequivocal terms. *Fireman's Fund American Ins Cos, supra, Hubbert v Acme Equipment Co,* 55 Mich App 313, 315-316; 222 NW2d 224 (1974).

In *Darin & Armstrong v Ben Agree Co,* 88 Mich App 128, 135-136; 276 NW2d 869 (1979), the Court interpreted the following indemnification provision:

"You agree to protect, defend, indemnify and hold harmless Darin & Armstrong, Inc., from all liabilities, claims or demands for injury or damage to any person or property arising out of or occurring in connection with the performance of this order."

The Court concluded that this language was not sufficiently clear to indemnify Darin & Armstrong against its own negligence.

In *Gartside, supra,* the school district made the following promise when it entered into a contract with the YMCA to use its camp facilities:

---

[1] When we refer to the indemnitee's "own negligence", we do not refer to the situation where he is solely or 100 percent liable for the resulting injury. Instead, we refer to those situations involving concurrent negligence, where both the indemnitee and the indemnitor are negligent. The indemnitee's "active" negligence can be anywhere from 1 percent to 99 percent.

"(f) To indemnify YMCA against, and to hold YMCA, its agents and employees harmless from, all claims, demands, costs or damages (including attorneys' fees) because of bodily injury, including death, or property damage to any person or legal entity at any time arising out of or in any way connected with School's use of the Camp and its facilities."

The Court concluded that this language was equivocal, and the question of whether the contract was intended, in light of all of the circumstances, to indemnify the YMCA for its own negligence was a question for the trier of fact, and could not be resolved by the trial court by way of summary judgment.

In contrast, the Court in *Tope v Waterford Hills Road Racing Corp,* 81 Mich App 591, 594-595; 265 NW2d 761 (1978), upheld the following language as sufficient to indemnify the defendant from liability for his own negligence:

"1. HEREBY RELEASES, WAIVES, DISCHARGES AND COVENANTS NOT TO SUE the Promoter, Racing Association, Track Operator, Track Owner, Landowner, and each of them, their officers, and employees, all for purposes herein referred to as RELEASEES, from all liability to the Undersigned, his personal representatives, assigns, heirs and next of kin for all loss or damage, and any claim or demands therefor, on account of injury to the person or property or resulting in death of the Undersigned, *whether caused by the negligence of Releasees or otherwise* while the Undersigned is upon the Restricted Area." (Emphasis added.)

In the case at bar, the subcontract between Waterford and Domar contained the following indemnification provision:

"IX-LIABILITY
"1. Notwithstanding the carrying of insurance as

hereinbefore provided, Subcontractor agrees to indemnify and hold harmless Contractor and the Owner, their successors and assigns, from all claims, liabilities, costs and expense whatsoever for injury or damage to any person or property arising out of the performance of this Subcontract, or arising or occurring by reason of the Work, or the use thereof, or any defect therein, or condition thereof.

"2. Without limiting the generality of the foregoing, Subcontractor hereby releases Contractor and the Owner from all claims and liabilities on account of, and does hereby agree to indemnify and hold harmless Contractor, and the Owner, their successors and assigns, from all claims, liabilities, costs and expense whatsoever for injury or damage to any person or property arising out of the use by Subcontractor or its employees of any equipment or facilities whether the same be owned or operated by Contractor, Subcontractor or others."

We find that this language is not specific and clear enough to support an inference, as a matter of law, that it was intended to indemnify Waterford for its own negligence. See *Darin & Armstrong, supra.* The intent of the parties in light of the surrounding circumstances requires further factual development, and is a question to be resolved by the trier of fact. The trial court erred in granting summary judgment based on the contractual indemnification provision.

III. INSURANCE.

The trial court apparently found that Domar's agreement to provide Waterford with liability insurance provided a separate and independent basis for indemnity.

The subcontract contained the following provision concerning insurance:

"VIII-INSURANCE

"1. Prior to commencement of the Work, Subcontrac-

tor shall obtain and thereafter maintain in effect, for the benefit of Contractor, Subcontractor and the Owner, such insurance coverage relating to the Work as Contractor is required to maintain under the agreement with the Owner or as is specified on the face of this Purchase Order.

"2. If no other coverage is required or specified, Subcontractor shall obtain and maintain in effect liability insurance for the benefit of Contractor, Subcontractor and the Owner with coverage and limits, not less than the following: Workmen's Compensation and employers' liability insurance as required by law; Contractors Public Liability insurance with limits of $50,000 and $100,000; Property damage insurance with limits of $25,000; Motor vehicle liability insurance with limits of $50,000 and $100,000; and Motor vehicle property damage insurance with limits of $25,000.

"3. Prior to commencement of the Work, Subcontractor shall deliver to Contractor the policies of insurance or certificates of the insurers to the effect that the foregoing insurance is in effect, and providing that the same may not be cancelled except upon not less than ten (10) days prior notice in writing to Contractor."

Neither this provision, nor the insurance provision between Waterford and the city, contained an independent indemnification clause. Thus, the fact that insurance was required does not enlarge or alter the scope of the indemnification agreement. See generally, *Hubbert v Acme Equipment Co, supra.*

We would view the insurance requirement as a fund to pay those amounts for which the subcontractor becomes liable. The scope of the liability is governed by the indemnification provision, unless the contract clearly provides otherwise. Thus, the trial court erred in granting summary judgment based on Domar's breach of the insurance requirement. However, Domar's failure to obtain the

requisite insurance may be the basis of a separate claim for breach of contract by Waterford.

IV. MISCELLANEOUS.

We will briefly address the remaining issues which were raised by the appellant.

Domar contends that the trial court erred when it allowed Waterford to amend its pleadings on the first day of trial to include the additional count involving the insurance provision.

GCR 1963, 118.1, allows amendments by leave to be freely given "when justice so requires". In *Ben P Fyke & Sons v Gunter Co,* 390 Mich 649, 656-664; 213 NW2d 134 (1973), the Supreme Court said that a motion to amend should ordinarily be granted absent factors such as undue delay, bad faith, or dilatory motives on the part of the movant, or unless the opponent would be unduly "prejudiced" by the amendment. "Prejudice" was defined as a matter which would prevent a party from having a fair trial, or a matter which he could not properly contest, *e.g.* when surprised. This Court will not reverse a trial court's decision to allow or disallow an amendment to pleadings unless there has been an abuse of discretion. *Ball v Render,* 64 Mich App 148, 151; 235 NW2d 90 (1975).

We do not find that Domar was "prejudiced" or "surprised" by the additional allegation, which was based on the contract between the parties, as Domar was aware of the existence of this claim. The fact that the request to amend was not in written form, as required by the court rule, does not invalidate the amendment. See *Berg-Powell Steel Co v The Hartman Group,* 89 Mich App 423, 426-427; 280 NW2d 557 (1979).

Finally, Domar contends that the copy of the contract which Waterford submitted with its mo-

tion for summary judgment was not the original, nor was it properly authenticated, as required by MRE 1002 and MRE 901.

However, under MRE 1003, a duplicate is admissible to the same extent as an original unless (1) a genuine question is raised as to the authenticity of the original or (2) in the circumstances it would be unfair to admit the duplicate in lieu of the original.

Domar never introduced any evidence questioning the authenticity of the contract or of the copy submitted. While Domar asserts that the copy was illegible, the trial court apparently had no difficulty in reading it.

V. SUMMARY.

In conclusion, we find that the trial court erred in granting Waterford's motion for summary judgment on its third-party action for indemnification. Further factual development is needed in order to determine whether Waterford's negligence was "active" or "passive", which must be determined prior to granting a recovery on the basis of common-law indemnity. Similarly, the contractual indemnity provision does not unequivocally indemnify Waterford for its own acts of negligence, so the circumstances and intent of the parties must be further explored at trial.

We find that the insurance provision did not contain a separate promise for indemnity, and the trial court erred in granting summary judgment on that basis, although it may be the basis for a separate claim for breach of contract.

Reversed and remanded for a trial on the third-party action consistent with this opinion.

ON REHEARING

R. M. MAHER, P.J. On rehearing, Waterford contends that, when Domar breached its contractual obligation to provide liability insurance on behalf of Waterford, Domar assumed the role of the insurer. Waterford further alleges that the trial court considered the breach of contract issue as an independent basis for granting Waterford's motion for summary judgment, rather than as an adjunct to the indemnification agreement. Based on these allegations, Waterford contends that, under the unambiguous term of its contractual obligation with Domar, its measure of damages for the breach equals the amount of insurance which Domar agreed to procure, together with all defense costs and expenses.

We must reject Waterford's contention that summary judgment was appropriate to dispose of the question of Domar's breach of its obligation to procure insurance. Contracts which are in contravention of public policy are unenforceable. *Mahoney v Lincoln Brick Co,* 304 Mich 694; 8 NW2d 883 (1943). Contracts which violate a statute are contrary to public policy and cannot be enforced by the courts, even though actual injury does not result from the agreement. *Skutt v Grand Rapids,* 275 Mich 258; 266 NW 344 (1936), *Jaenicke v Davidson,* 290 Mich 298; 287 NW 472 (1939), *Federoff v Ewing,* 386 Mich 474, 481; 192 NW2d 242 (1971).

We have previously noted that the Legislature has declared it to be contrary to public policy in Michigan for anyone in the construction industry to make any agreement which would absolve him from liability for his sole negligence, declaring

that any such agreement is void and unenforceable, MCL 691.991; MSA 26.1146(1). Any agreement whereby a subcontractor must procure insurance which includes coverage for the general contractor's sole negligence would contravene Michigan public policy as expressed by the statute and would be unenforceable. Since the extent of Waterford's negligence had to be determined as a question of fact, summary judgment was not the appropriate vehicle to dispose of the case. We therefore adhere to our earlier conclusion that the trial court erred in granting Waterford's motion for summary judgment and would remand the matter for a trial.