FISCHBACH-NATKIN COMPANY v POWER PROCESS PIPING, INC

Docket No. 85272. Submitted April 9, 1986, at Detroit. Decided February 2, 1987. Leave to appeal applied for.

William Green, an employee of Power Process Piping, Inc., was injured while installing a machine at a Ford Motor Company plant. The machine was being installed under the direction of Fischbach-Natkin Company, the general contractor, which had, in turn, entered into a subcontract with Green's employer. Green and his wife obtained a jury verdict of $488,000 for injuries sustained in the accident, which was reduced to $366,000 on the basis of the jury's finding that Green was twenty-five percent negligent. That jury also found that the manufacturer of the machine was twenty-five percent negligent and Fischbach-Natkin was fifty percent negligent. Fischbach-Natkin thereafter brought an indemnity action in Wayne Circuit Court, alleging that Power Process Piping, Inc., was required to indemnify Fischbach-Natkin on the basis of the indemnity provision contained in the subcontracting agreement. Plaintiff moved for summary judgment. The trial court, Thomas J. Foley, J., granted the plaintiff's motion, holding as a matter of law that the indemnity provision was enforceable and clearly required indemnity by defendant under the circumstances. Defendant appealed.

The Court of Appeals *held:*

1. The language in the subcontractor agreement, which provided that defendant would indemnity plaintiff "against all liability or claimed liability for injuries . . . arising out of or resulting from or in any way connected with the work covered by [the] Subcontract," evidences a clear intent on the part of the parties that defendant would indemnify plaintiff from all liability arising out of the subcontract, including liability caused by plaintiff's own negligence.

2. Although the language of the indemnity provision is broad

REFERENCES

Am Jur 2d, Indemnity §§ 13-18.

Liability of subcontractor upon bond or other agreement indemnifying general contractor against liability for damage to person or property. 68 ALR3d 7.

enough to include indemnity for plaintiff's sole negligence, the indemnity provision would be void as against public policy only if plaintiff, in fact, sought to be indemnified for its sole negligence. In determining whether the indemnitee is seeking indemnity for its sole negligence, one must find that the underlying injury was the result of the indemnitee's sole negligence.

3. Since the jury that rendered the verdict in favor of defendant's employee found that both the employee himself and the manufacturer of the machine being installed were comparatively negligent along with plaintiff for the injuries to the employee, plaintiff was not seeking indemnity for damages resulting from an injury caused by its sole negligence.

Affirmed.

1. INDEMNITY — CONTRACTS — JUDICIAL CONSTRUCTION.

Indemnity contracts are construed strictly against the party who drafts them and against the indemnitee; however, indemnity contracts, as with other contracts, should be construed so as to give effect to the intentions of the parties; in ascertaining the intentions of the parties, one must consider not only the language used in the contract but also the situation of the parties and the circumstances surrounding the contract; an indemnity contract may be held to indemnify oneself from losses arising out of one's own negligence even where that intent is not expressed in the contract language itself in clear and unequivocal terms where such intention can be ascertained from the language of the contract, the surrounding circumstances or the purpose sought to be accomplished by the parties.

2. INDEMNITY — CONTRACTS — JOINT NEGLIGENCE.

An indemnity agreement which provides that the indemnitor will indemnify for any liability which is occasioned, either directly or indirectly, by any act or omission of the indemnitor or anyone acting on behalf of the indemnitor or incident to the contract out of which the indemnity agreement arises unless caused by the indemnitee's sole negligence is sufficient to provide a right to indemnity for an injury resulting from the joint negligence of the indemnitee and the indemnitor or one acting on behalf of the indemnitor where the situation of the parties and the circumstances surrounding the indemnity contract indicate that indemnification of the indemnitee's joint negligence was contemplated.

3. INDEMNITY — CONTRACTS — CONSTRUCTION CONTRACTS — SOLE NEGLIGENCE.

An indemnity provision in a construction contract which purports

to indemnify the indemnitee for its own negligence is not void on its face but is rather void only if the indemnitee actually seeks indemnity for liability resulting from injuries or damages caused by its sole negligence (MCL 691.991; MSA 26.1146[1]).

4. INDEMNITY — CONTRACTS — CONSTRUCTION CONTRACTS — JOINT NEGLIGENCE — SOLE NEGLIGENCE.

The statutory provision that indemnity clauses in construction contracts which seek to indemnify the indemnitee for the indemnitee's sole negligence are void focuses on whether the injury is solely attributable to the indemnitee's negligence, not whether a portion of the damages is attributable to the indemnitee; an indemnitee which is found to be comparatively negligent with others for the injury may enforce an indemnity provision since, if comparatively negligent with others, the indemnitee is not solely negligent; the indemnitee is not required to prove separate negligence on the part of the indemnitor (MCL 691.991; MSA 26.1146[1]).

*Gofrank & Kelman* (by *Larry S. Baker*), for plaintiff.

*Fletcher, Tice & McNally, P.C.* (by *Michael K. McNally*), for defendant.

Before: BEASLEY, P.J., and D. E. HOLBROOK, JR., and D. L. SULLIVAN,* JJ.

BEASLEY, P.J. Defendant, Power Process Piping, Inc., appeals from an order granting summary judgment to plaintiff, Fischbach-Natkin Company, under GCR 1963, 117.2(3), now MCR 2.116(C)(10). The summary judgment was granted under an indemnity provision contained in a subcontract between plaintiff, as general contractor, and defendant, as subcontractor, which provided:

Section 12. The Subcontractor [Power Process Piping, Inc.] agrees to and shall indemnify, protect, defend and save harmless Company [Fischbach-Natkin Company] from and against all liabil-

---

* Circuit judge, sitting on the Court of Appeals by assignment.

ity or claimed liability for injuries, including
death, to any and all persons whomsoever and for
any and all property damage arising out of or
resulting from or in any way connected with the
work covered by this Subcontract or the operations
or acts of commission or omission of the Subcon-
tractor, his subcontractors, agents and employees.

This case arises from a serious industrial injury
that occurred on January 10, 1980, in which Wil-
liam Green, an employee of defendant, was seri-
ously injured when a heavy hydraulic machine
tipped over on him during installation at a Ford
Motor Company plant. On August 30, 1984, Green
and his wife obtained a jury verdict in the amount
of $488,000 against LaSalle Machine Tool Com-
pany, which had designed and manufactured the
hydraulic machine, and plaintiff, who had been
hired by Ford Motor Company as general contrac-
tor to assist in installation of the hydraulic ma-
chine. The jury decided that Green was twenty-five
percent negligent under a comparative negligence
instruction, thus reducing the amount of the ver-
dict to $366,000. The jury decided that LaSalle
Machine Tool Company was twenty-five percent
negligent and Fischbach-Natkin Company fifty
percent negligent.

Prior to the jury verdict, plaintiff had requested
defendant to indemnify it and to assume defense of
the claim under the indemnity provision referred
to above. Defendant did not respond to this re-
quest, and plaintiff was not permitted to add de-
fendant as a third-party defendant in the Green
lawsuit, presumably because Green was collecting
workers' compensation benefits from defendant's
carrier. Plaintiff then filed the within case, claim-
ing that there was no genuine issue of material
fact and alleging a right to indemnification under
Section 12 of the subcontract as a matter of law.

The trial judge agreed and granted summary judgment in favor of plaintiff and denied defendant's similar motion for summary judgment in its favor.

On appeal, defendant raises three issues. First, defendant claims that the trial court erred in concluding that Section 12 of the subcontract provides that defendant is to indemnify plaintiff for plaintiff's own acts of negligence. In addressing this issue, we recognize that indemnity contracts are construed strictly against the party who drafts them and against the indemnitee. However, it is also true that indemnity contracts should be construed so as to give effect to the intentions of the parties. In ascertaining the intentions of the parties, one must consider not only the language used in the contract, but also the situation of the parties and circumstances surrounding the contract.[1]

The additional rule of construction, imposed in earlier cases in this Court,[2] that indemnification contracts will not be considered to indemnify the indemnitee against losses from his own negligent acts unless such an intent is expressed in the contract language itself in clear and unequivocal terms, no longer applies.[3] This Court has concluded that broad, all-inclusive indemnification language may be interpreted to protect the indemnitee against its own negligence if such intent can be ascertained from other language in the contract, surrounding circumstances, or from the purpose sought to be accomplished by the parties.[4] Thus, although an indemnity provision does not ex-

[1] *Peeples v Detroit,* 99 Mich App 285, 294; 297 NW2d 839 (1980); *Pritts v J I Case Co,* 108 Mich App 22, 29; 310 NW2d 261 (1981), lv den 413 Mich 909 (1982); *Chrysler Corp v Brencal Contractors, Inc,* 146 Mich App 766, 771; 381 NW2d 814 (1985).

[2] See *Peeples, supra,* p 296.

[3] *Chrysler Corp, supra; Vanden Bosch v Consumers Power Co,* 394 Mich 428; 230 NW2d 271 (1975).

[4] *Pritts, supra,* p 28, citing *Vanden Bosch, supra.*

pressly state that the indemnitee will be shielded from its own negligence, such language is not mandatory to provide such indemnification.[5]

In *Paquin v Harnischfeger Corp,*[6] the Court cited the general rules of construction as described above in addressing whether an indemnification clause which broadly protected the indemnitee from "all claims, loss, expense, damage and liability" provided protection to the indemnitee for its own negligence as a matter of law. In ascertaining the intention of the parties, the *Paquin* Court relied on two separate and independent reasons for finding that the parties intended that the indemnification provision would protect the indemnitee from liability caused by its own negligence. The Court first noted that the indemnification provision expressly provided that the indemnitee would not be protected if the injury or damage was caused by its sole negligence in order to avoid a violation of MCL 691.991; MSA 26.1146(1). The *Paquin* Court concluded that this limitation indicated an intent to provide indemnity in all situations involving the indemnitee's own negligence except when the indemnitee's negligence was the sole cause of the injury or damage.[7]

The first basis relied on by the *Paquin* Court to find that the parties intended to indemnify the indemnitee for its own negligence does not apply in the within case, since no clause specifically excluding injuries or damages caused by plaintiff's sole negligence is included in the indemnification provision involved herein. However, the *Paquin* Court went on to find that the situation of the parties and the circumstances surrounding the

[5] *Paquin v Harnischfeger Corp,* 113 Mich App 43, 52; 317 NW2d 279 (1982).

[6] *Id.*

[7] *Id.,* pp 52-53.

contract also indicated that indemnification for the indemnitee's own negligence was intended. The *Paquin* Court supported this conclusion by noting that it was understood at the time the contract was entered into that the employees of both the indemnitee and indemnitor would be working in the same area and that the use of a crane would be shared. Thus, the possibility that an injury or damage would result from the indemnitee's negligence was apparent. In addition, the *Paquin* Court noted that the indemnitor was a substantial company with between twenty-five and one hundred employees and that the company officer in charge of preparing bids was familiar with this type of indemnification provision.[8]

This second basis used by the *Paquin* Court to ascertain the intent of the parties to indemnify the indemnitee for his own negligence is directly applicable in this case. Section 3 of the contract between plaintiff and defendant, as well as addendum No. 1 of the contract, clearly indicate that all the work connected with installing the machine would not be performed by defendant, and that the employees of plaintiff and other subcontractors would be present at the common work area. Thus, as in *Paquin*, the possibility that an injury or damage would result from plaintiff's negligence was apparent at the time the parties entered the contract providing for indemnification.

Furthermore, we note that defendant's president signed the contract and that defendant has not made any claim that the contract was unconscionable in any way or that the parties had significantly disparate bargaining power. In fact, despite the nine-month opportunity for discovery provided by the trial judge in this matter, defendant has

---

[8] *Id.*, p 53.

not conducted any discovery which would possibly rebut an inference that the parties intended to indemnify plaintiff for its own negligence.

Therefore, we conclude that the situation of the parties and the circumstances surrounding the contract reveals that the parties intended that plaintiff be indemnified for damages or injuries caused by its own negligence. The language of the indemnity provision is broad and clear, encompassing *all* liability for injuries, including death and all property damage. In light of the situation surrounding the parties and the contract in this case, we find that the trial judge did not err in concluding that, as a matter of law, no ambiguity exists concerning the intent of the parties to indemnify plaintiff for its own negligence.

In reaching this conclusion, we distinguish the cases relied on by defendant on appeal which hold that indemnification provisions similar to the one involved herein did not provide the indemnitee with protection from its own negligence. First of all, these cases all applied the now inapplicable requirement that the contract language itself clearly and unequivocally provide the indemnitee with protection from his own negligence. But, even if the circumstances surrounding the contracts had been considered by the Courts in those cases, the circumstances in those cases did not present a situation similar to that presented in the within case. The indemnitees or their employees in cases relied on by defendant were not anticipated to be present in the work area contemplated in the contracts. For example, in *Peeples v Detroit*,[9] the Court noted that the work site was under the subcontractor indemnitor's exclusive control. Also,

---

[9] *Peeples, supra,* p 294.

in *Gartside v YMCA*,[10] the indemnitor was to have exclusive use of the camp area involved in the contract with the indemnitee. Based on these factual distinctions, we find that the cases relied on by defendant do not defeat the trial judge's conclusion that the indemnification provision in this case was intended to provide plaintiff indemnitee with protection from its own negligence.

Next, defendant argues that, if the indemnification provision was intended to protect plaintiff from its own negligence, it violates public policy and is void on its face pursuant to MCL 691.991; MSA 26.1146(1), which provides:

> A covenant, promise, agreement or understanding in, or in connection with or collateral to, a contract or agreement relative to the construction, alteration, repair or maintenance of a building, structure, appurtenance and appliance, including moving, demolition and excavating connected therewith, purporting to indemnify the promisee against liability for damages arising out of bodily injury to persons or damage to property caused by or resulting from the *sole* negligence of the promisee or indemnitee, his agents or employees, is against public policy and is void and unenforceable. [Emphasis supplied.]

We disagree. This Court has recently resolved this issue in *Redfern v R E Dailey & Co.*[11] The *Redfern* Court addressed the validity of an indemnification provision that provided the indemnitee with protection from its own negligence, which the Court characterized as a "middle ground" indemnification provision, because it did not expressly exclude liability caused by the indemnitee's sole

---

[10] 87 Mich App 335; 274 NW2d 58 (1978), lv den 406 Mich 915 (1979).

[11] 146 Mich App 8; 379 NW2d 451 (1985).

negligence. Such an express exclusion would have rendered the provision clearly valid under the statute. In addition, the *Redfern* indemnification provision did not, by its express terms, separate indemnity protection for the indemnitee's partial negligence from protection for the indemnitee's sole negligence. Such express separation of partial and sole negligence indemnity protection would allow for each severance of the offending sole negligence protection provision.

The indemnification provision in *Redfern* merely provided the indemnitee with protection from its own negligence. However, the *Redfern* Court concluded that under such a middle ground indemnity provision, as is present herein, the indemnitee is allowed every presumption in favor of a legal purpose for the indemnity agreement. The *Redfern* Court went on to conclude that such an indemnity provision is not void on its face and will be considered void only if the indemnitee actually seeks indemnity for liability resulting from injuries or damages caused by its sole negligence. This is true despite the inability of a court to neatly sever the language which violates the statute from the indemnity provision.[12]

Thus, in the within case we must determine whether plaintiff indemnitee is actually seeking to be indemnified for liability which resulted from its sole negligence. This brings us to the third argument raised by defendant on appeal. Defendant asserts that plaintiff, in order to avoid the statutory proscription against indemnity where the indemnitee's sole negligence caused the injury, must establish that defendant indemnitor itself was negligent. Defendant goes on to assert that the establishment of defendant's negligence in

---

[12] *Id.,* pp 15-16.

causing the injury in this case involves genuine issues of material fact and, thus, the trial judge's grant of summary judgment was inappropriate.

In making this assertion, defendant argues that the jury's finding in the underlying action that its employee was twenty-five percent negligent, La-Salle Machine Tool Company was twenty-five percent negligent, and plaintiff was fifty percent negligent in causing the employee's injury does not establish that plaintiff is not seeking indemnity for injuries caused by its sole negligence. Defendant relies upon this Court's statement in *Peeples:*

> Thus, as a matter of public policy, the indemnitor is not liable even if the contract specifically provides for indemnity for the indemnitee's negligence, *unless the indemnitor is also negligent. Nanasi* [*v General Motors Corp,* 56 Mich App 652; 224 NW2d 914 (1974)], *Robertson v Swindell-Dressler Co,* 82 Mich App 382, 399; 267 NW2d 131 (1978). [Emphasis added. *Peeples, supra,* p 295.]

However, the *Peeples* Court did not have to address the issue of the effect of a finding of comparative negligence on the determination of whether an indemnification provision is actually being used to protect an indemnitee from injuries actually caused by its sole negligence. Furthermore, the *Peeples* statement was cited from cases in this Court decided prior to adoption of the doctrine of comparative negligence in Michigan, as announced in *Placek v Sterling Heights.*[13] Thus, defendant's reliance on *Peeples* to require a finding that the indemnitor itself was negligent before an indemnitee can avoid the statutory prohibition against protection from liability for injuries caused by its sole negligence is misplaced.

---

[13] 405 Mich 638; 275 NW2d 511 (1979).

This Court, in two recent cases, has addressed this issue in a situation like the one presented herein, where an indemnitor's employee has been found comparatively negligent with the indemnitee in causing the injury. Unfortunately, the two panels of this Court split on this issue. In *Smith v O'Harrow Construction Co*,[14] this Court held that, since any portion of damages the indemnitee would be held liable for would be the result of its sole negligence, enforcement of the indemnification provision in that situation would violate MCL 691.991; MSA 26.1146(1). However, in *Paquin, supra*, another panel of this Court held that, since the jury had found that the injury resulted from both the indemnitor's employee's negligence and the indemnitee's negligence, the injury was not due to the indemnitee's sole negligence and the indemnification provision was not void in that situation.

The conflict between *O'Harrow* and *Paquin* was recently addressed in *Burdo v Ford Motor Co*,[15] a federal district court decision applying Michigan law to a situation where an indemnitee was seeking indemnification for its liability for an injury which was caused by both the negligence of the indemnitor's employee and the negligence of the indemnitee. In finding that the indemnification provision was not void under the statute, the *Burdo* Court rejected the reasoning of *O'Harrow* which focused on the portion of damages attributable only to the indemnitee's negligence. The *Burdo* Court adopted the reasoning of *Paquin*, finding that MCL 691.991; MSA 26.1146(1) expressly focuses on the causes of the resulting injury as a whole in determining whether the

[14] 95 Mich App 341; 290 NW2d 141 (1980), lv den 409 Mich 873 (1980).

[15] 588 F Supp 1319 (ED Mich, 1984).

indemnitee is seeking protection for its sole negligence.

Although interpretations of Michigan statutes by federal courts are not binding precedent upon this Court, we agree with the *Burdo* analysis of this issue. The express language of MCL 691.991; MSA 26.1146(1) requires that the "bodily injury," as a whole, result from the sole negligence of the indemnitee in order to find the indemnification provision unenforceable. The statute does not focus on the portion of damages solely attributable to the indemnitee's negligence. Thus, we conclude that the *O'Harrow* Court incorrectly focused on the apportionment of damages, and we adopt the *Paquin* analysis which focuses on the injury as a whole.

Applying the *Paquin* analysis to this case, we believe that plaintiff indemnitee is not seeking indemnification for an injury caused by its sole negligence. The jury in the underlying action determined that the injury to defendant's employee was the result of the employee's own negligence, LaSalle Machine Tool Company's negligence and plaintiff indemnitee's negligence. In such a situation, plaintiff indemnitee is not required to prove that the employee's injury was also caused by the separate negligence of the defendant indemnitor itself in order to avoid the prohibition in the statute against indemnification for injuries caused by the indemnitee's sole negligence. Thus, even if there is a genuine issue of fact as to defendant's own negligence in causing the injury to its employee, such a factual issue is immaterial and irrelevant in determining the statutory validity of the indemnification provision.

Based on our above construction of MCL 691.991; MSA 26.1146(1) and the factual situation presented in this case, we conclude that the trial

judge did not err in finding that, as a matter of law, plaintiff indemnitee was not seeking indemnification for liability resulting from injuries caused by its sole negligence in violation of public policy. In reaching this conclusion, we note that, despite the trial judge's specific grant of nine months for discovery procedures, defendant, in the trial court and on appeal, completely failed to allege a genuine issue of material fact disputing the jury's finding that the negligence of its employee and of LaSalle Machine Tool Company also caused the injury involved in this matter. Therefore, the trial judge properly granted plaintiff's motion for summary judgment, finding that, as a matter of law, the indemnification clause provided the indemnitee with protection from its own negligence and that, in this situation where the injury was not the result of plaintiff's sole negligence, application of the indemnification clause did not violate MCL 691.991; MSA 26.1146(1).

Affirmed.