# STATE OF MICHIGAN

# COURT OF APPEALS

CAMERON WIGGINS, a Minor, by his Next Friends, DAVID WIGGINS and BROOK WIGGINS, and DAVID WIGGINS and BROOK WIGGINS, Individually,

Plaintiffs,

v

HORROCKS NURSERY FARMS, INC.,

Defendant/Cross-Defendant-
Appellee/Cross-Appellant,

and

SKANSKA-SCHWEITZER CONSTRUCTION,
also known as SKANSKA-SCHWEITZER, A
JOINT VENTURE,

Defendant/Cross-Plaintiff-
Appellant/Cross-Appellee.

UNPUBLISHED
December 13, 2016

No. 328027
Calhoun Circuit Court
LC No. 2011-003222-NI

Before: M. J. KELLY, P.J., and O'CONNELL and BECKERING, JJ.

PER CURIAM.

Cross-plaintiff Skanska-Schweitzer Construction (Skanska) appeals as of right the trial court's order granting summary disposition to cross-defendant, Horrocks Nursery Farms, Inc., (Horrocks) on Skanska's cross-claims for indemnification. Skanska was the construction manager of a project to renovate the playground of plaintiff Cameron Wiggins's elementary school when a piece of playground equipment that Horrocks was in the process of moving fell on Wiggins. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In August 2009, Horrocks and Battle Creek Public Schools (the school) entered into a landscaping services contract for an elementary school. The contract named Skanska as construction manager for the project. The contract provided that the parties could only modify

-1-

the contract in specific ways, including by issuance of a "change order." The contract also include a provision under which Horrocks agreed to indemnify the school and Skanska for any claims "arising out of or resulting from performance of the Work . . . to the extent caused in whole or in part by the negligent acts or omissions of [Horrocks]."

In late September 2009, the school asked Skanska to obtain a price quote to remove a teeter totter. Skanska's representative Thomas Beuchler testified at deposition that removing the teeter totter was not part of the original contract. Beuchler forwarded the request to Horrocks, who informed Skanska that it could do the work for $1,000. Beuchler informed the school of the price, and the school told Beuchler to have the work done. Beuchler then told Horrocks to proceed with the work and that Skanska would submit a change order shortly.

As Horrocks removed the teeter totter, an employee left the unmoored teeter totter unattended. The school released children onto the playground where Horrocks was working, and several children climbed onto the unmoored teeter totter, which fell on Wiggins and broke his leg. On October 5, Horrocks submitted a "Request Change Order" to add removal of the teeter totter to the parties' contract, but Skanska refused to authorize the change order.

Wiggins subsequently sued Horrocks and Skanska for negligence. Skanska filed a cross-claim against Horrocks, alleging that Horrocks was obligated to indemnify Skanska under the contract. A case evaluation panel awarded claims to Wiggins from Horrocks and to Wiggins from Skanska without any mention of Skanska's cross-claim. Both Horrocks and Skanska accepted the claims. Ultimately, both parties settled with Wiggins.

In November 2014, Horrocks requested that the trial court dismiss Skanska's cross-claims, asserting that Skanska's acceptance of the case evaluation award precluded it from continuing to litigate its cross-claims. The trial court denied the request, concluding that Horrocks was asking it "to find something within the evaluators' decision that really isn't there" and reasoning that it was just as likely that the evaluators ignored the cross-claim or forgot to make an award.

On April 19, 2015, the trial court entered findings and an order in a case that Skanska-Schweitzer had filed against Horrocks's insurer, Farm Bureau General Insurance Company of Michigan (Farm Bureau), in which Skanska alleged that Farm Bureau was required to defend and indemnify it because Skanska was an insured under Horrocks's policy with Farm Bureau.[1] In its opinion in the declaratory action, the trial court concluded that the teeter totter removal was not part of the landscape contract.

Following the order in the declaratory action case, Horrocks filed a motion for summary disposition under MCR 2.116(C)(8) and (10), asserting that the declaratory action collaterally estopped Skanska from asserting contractual indemnification. Horrocks also sought summary disposition on Skanska's claims for implied and common law indemnification because Wiggins's complaint alleged that Skanska was actively negligent. The trial court concluded that

---

[1] This panel is concurrently deciding an appeal from that case.

the declaratory action case collaterally estopped Skanska from asserting express contractual indemnification in this case, and it concluded that Wiggins's allegations of active negligence precluded Skanska's claims for implied and common law indemnification.

Skanska and Horrocks both appeal. Skanska appeals the trial court's rulings on indemnification and Horrocks cross-appeals the trial court's refusal to dismiss Skanska's claims on the basis of Skanska's acceptance of the case evaluation award.

## II. STANDARDS OF REVIEW

This Court reviews de novo the trial court's decision on a motion for summary disposition. *Gorman v American Honda Motor Co, Inc*, 302 Mich App 113, 115; 839 NW2d 223 (2013). When a party moves the trial court for summary disposition under MCR 2.116(C)(8) and (10) and the trial court considered documents outside the pleadings when deciding the motion, we review the trial court's decision under MCR 2.116(C)(10). *Hughes v Region VII Area Agency on Aging*, 277 Mich App 268, 273; 744 NW2d 10 (2007). A party is entitled to summary disposition under MCR 2.116(C)(10) if "there is no genuine issue as to any material fact, and the moving party is entitled to judgment . . . as a matter of law." A genuine issue of material fact exists if, when viewing the record in the light most favorable to the nonmoving party, reasonable minds could differ on the issue. *Gorman*, 302 Mich App at 116.

This Court reviews de novo the proper interpretation of a contract, *Klapp v United Ins Group Agency, Inc*, 468 Mich 459, 469; 663 NW2d 447 (2003), and the legal effect of a contractual provision, *DeFrain v State Farm Mut Auto Ins Co*, 491 Mich 359, 366-367; 817 NW2d 504 (2012). This Court applies the same principles to contractual interpretation as to statutory interpretation, with the purpose of determining and enforcing the parties' intent. See *Klapp*, 468 Mich at 468. The goal of contractual interpretation is to honor the parties' intent and to enforce the contract's plain terms. *Davis v LaFontaine Motors, Inc*, 271 Mich App 68, 73; 719 NW2d 890 (2006). We discern the parties' intent from the contract's language. *Id*.

## III. ANALYSIS

### A. EXPRESS CONTRACTUAL INDEMNIFICATION

Skanska contends that the trial court improperly relied on the doctrine of collateral estoppel. Skanska further argues that the trial court improperly determined that the landscaping contract's indemnification provision did not apply because the teeter totter removal was part of the parties' contract. While the trial court improperly relied on the doctrine of collateral estoppel, we conclude that it properly granted summary disposition where the parties' contract did not include the teeter totter removal.

"Collateral estoppel precludes relitigation of an issue in a subsequent, different cause of action between the same parties *when the prior proceeding culminated in a valid final judgment* and the issue was actually and necessarily determined in the prior proceeding." *Porter v City of Royal Oak*, 214 Mich App 478, 485; 542 NW2d 905 (1995) (emphasis added). A decision becomes final for purposes of collateral estoppel when "all appeals have been exhausted or when the time available for an appeal has passed." *Leahy v Orion Twp*, 269 Mich App 527, 530; 711

NW2d 438 (2006). In this case, Skanska had not exhausted its appeals in its case involving Farm Bureau. Thus, the trial court improperly applied the doctrine of collateral estoppel.

However, we conclude that the trial court properly granted summary disposition. The indemnification provision required Horrocks to indemnify Skanska-Schweitzer for injuries or damages arising out of "the Work." The contract specifically defined "the Work" as the landscaping and irrigation services, and it did not include the teeter totter removal. The contract's modification clause provided that the scope of the contract could only be changed in specified ways, including through a change of work order. Horrocks submitted such an order regarding the teeter totter, but Skanska denied it. Accordingly, we conclude that the teeter totter removal was not part of the parties' contract, and the trial court properly concluded that the contractual indemnification provision did not apply.

## B. IMPLIED AND COMMON-LAW INDEMNIFICATION

Skanska contends that the trial court improperly granted summary disposition because Horrocks's performance of work after a request by Skanska created an implied contractual indemnification. We disagree.

"In order to establish an implied contract to indemnify, there must be a special relationship between the parties or a course of conduct whereby one party undertakes to perform certain services and impliedly assures indemnification." *Palomba v East Detroit*, 112 Mich App 209, 217; 315 NW2d 898 (1982). Common-law indemnification "is based on the equitable principle that where the wrongful act of one results in another being held liable, the latter party is entitled to restitution from the wrongdoer." *Hill v Sullivan Equip Co*, 86 Mich App 693, 696; 273 NW2d 527 (1978). The party seeking implied identification or common-law indemnification must be free of active negligence. *Dale v Whiteman*, 388 Mich 698, 705; 202 NW2d 797 (1972); *Botsford Continuing Care Corp v Intelistaf Healthcare, Inc*, 292 Mich App 51, 62-63; 807 NW2d 354 (2011). To determine whether a party is actively negligent, the court must examine the plaintiff's complaint, and if the complaint alleges active negligence (rather than derivative liability), neither implied contractual indemnification nor common-law indemnification apply. *Hill*, 86 Mich App at 696-697; *Botsford*, 292 Mich App at 63.

In this case, Wiggins alleged that both Horrocks and Skanska failed to disclose the existence of the hazard, failed to inspect and maintain the jobsite in a safe condition, failed to warn Wiggins of the danger, and failed to establish a safety program. These were allegations of direct negligence on Skanska's part, not claims that Skanska was vicariously liable for Horrocks's negligence. Because Wiggins's complaint involved allegations of active negligence, Skanska's claims of implied and common-law indemnification necessarily failed.

Skanska contends that this Court should look beyond Wiggins's complaint to the evidence to determine whether actual active negligence existed. Skanska relies on this Court's decisions in *Peeples v Detroit*, 99 Mich App 285, 293; 297 NW2d 839 (1980), and *Botsford*, 292 Mich App at 63. *Botsford* is easily distinguishable from this case because in *Botsford*, this Court held that the underlying allegations of the plaintiff's complaint control unless the underlying action has already been tried by a jury, in which case "the nature of the claims must be determined by examining not only the primary plaintiff's complaint, but also the issues actually

-4-

submitted to and decided by the jury." *Id*. at 63. Because the present action did not proceed to a jury trial on the underlying action, *Botsford* is inapplicable.

In *Peeples*, this Court looked to the responsibilities outlined in the parties' contract to determine whether the party seeking indemnification was actively negligent. *Peeples*, 99 Mich App at 293-294. However, subsequent to *Peeples*, the Michigan Supreme Court made it clear that in cases in which parties have settled with the plaintiff, it is the claims remaining on the underlying complaint that control:

> [W]ithout first seeking summary disposition in regard to its active fault, plaintiff may not seek indemnification from third-party defendant where it settled the underlying complaint for both active and passive fault and did not provide defendant with the opportunity to participate in settlement negotiations. Of course, if the plaintiff were to be successful at the summary disposition stage regarding its active negligence, only a claim for passive negligence would remain and it would be entitled to settle the claim and seek indemnification from the defendant, even without providing the defendant the opportunity to participate in the settlement negotiations. [*St Luke's Hosp v Giertz*, 458 Mich 448, 457-458; 581 NW2d 665 (1998).]

Because the Supreme Court held that a party who faced allegations of both active and passive negligence was required to achieve summary disposition on its claims of active negligence before it could seek identification for a settlement on claims of passive negligence, it is clear that the Supreme Court concluded that the allegations in the complaint control when resolving indemnification after a settlement agreement.

In this case, all Wiggins's allegations against Skanska were for active negligence, and Skanska is seeking indemnification for their settlement. Skanska's settlement with Wiggins could not have been based in passive negligence because there were no allegations of passive negligence against it. Because the only allegations concerned active negligence, the trial court did not need to look beyond Wiggins's complaint to resolve this issue. We conclude that the trial court properly granted summary disposition on Skanska's cross-claims of implied and common-law indemnification.

Because the trial court properly dismissed Skanska's cross-appeal on the basis of indemnification, we decline to reach Skanska's assertions regarding the trial court's ruling on the case evaluation. An issue is moot when it can have no practical legal effect on the controversy. *Gen Motors Corp v Dep't of Treasury*, 290 Mich App 355, 386; 803 NW2d 698 (2010). Because the trial court properly dismissed Skanska's claims on indemnification grounds, any determination of whether the trial court should have earlier dismissed Skanska's claims can have no practical legal effect on this controversy.

We affirm.

/s/ Michael J. Kelly
/s/ Peter D. O'Connell
/s/ Jane M. Beckering

-5-