**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 11a0543n.06

No. 09-1877

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**

*Aug 08, 2011*

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| HONEYWELL INTERNATIONAL, INCORPORATED, | ) ) ) | |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN |
| LUTZ ROOFING COMPANY, INCORPORATED, | ) ) ) | |
| Defendant-Appellant. | ) ) ) | |

BEFORE:    KEITH, CLAY, and COOK, Circuit Judges.

**KEITH, Circuit Judge.**  This is an action for contractual indemnity and breach of contract. The case arises out of plaintiff-appellee Honeywell International's suit against defendant-appellant Lutz Roofing Company for attorney's fees and other costs Honeywell incurred while defending itself in a tort claim brought by Geraldo Galvan, one of Lutz's former employees, and in prosecuting this action against Lutz. The district court held that Lutz, the subcontractor, breached its obligations to indemnify and insure Honeywell, the general contractor, under the contract governing Honeywell and Lutz's relationship. Lutz appeals, arguing that given the terms of the contract and the scope of Mr. Galvan's complaint, it cannot be held liable. It also argues that the district court incorrectly denied its motion as to Honeywell's claim for breach of contract with regards to a provision requiring that Lutz obtain insurance for Honeywell. For the first time, Lutz argues, on appeal, that the fees Honeywell requests for prosecuting this action are not recoverable under Michigan law. For the reasons discussed below, we AFFIRM the district court's rulings and decline to address Lutz's new argument regarding attorney's fees, finding that it was waived.

1

**FACTUAL BACKGROUND**

Plaintiff-Appellee Honeywell was the general contractor in charge of making improvements at Algonac High School in Algonac, Michigan. Defendant-Appellant Lutz was the roofing subcontractor. The parties' relationship was governed by the Subcontract Agreement ("Agreement") that both parties signed.

Under the Agreement's terms, Lutz agreed to take reasonable precautions to protect the safety of its employees. In particular, Lutz agreed to implement appropriate safety measures on its work at the site, including establishing "safety rules, posting applicable warnings and notices, erecting safety barriers, and establishing proper notice procedures to protect persons and property at the site and adjacent thereto from injury, loss or damage." R. 6-2, Subcontract Agreement, § 8.14.3. Lutz also pledged to comply with all required and recommended governmental safety rules and regulations. The Agreement also included an indemnity clause requiring Lutz to indemnify Honeywell in certain situations:

> To the fullest extent permitted by law, Subcontractor shall indemnify and hold harmless Customer, Honeywell and Owner and their agents and employees from claims, demands, causes of actions and liabilities of every kind and nature, including reasonable attorney's fees, incurred in connection with the execution of the Subcontract Work by the Subcontractor, its subcontractors, agents, or employees to the extent such claims, demands causes of actions and liabilities result from or arise from the negligent acts or willful misconduct of the Subcontractor, its subcontractors, agents or employees. This indemnification shall extend to claims occurring after this Subcontract is terminated as well as while it is in force. Subcontractor shall not be obligated to indemnify Customer, Honeywell, or Owner for claims arising from the negligence or willful misconduct of Customer, Honeywell, or Owner or their agents of employees or caused by the design and specifications provided by such parties. The indemnity set forth in this section shall not be limited by insurance requirements or by any other provision of this Subcontract.

*Id*. § 10.

The Agreement separately provided that Lutz would "procure and maintain insurance on all of its operations" including General Liability insurance covering all operations. *Id*. § 9. Lutz agreed to name Honeywell as an additional insured under the policy and to provide Honeywell with a

2

No. 09-1877, *Honeywell, Inc. v. Lutz Roofing Co., Inc.*

certificate of insurance verifying such coverage before the project commenced. Lutz obtained

insurance from Lexington Insurance Company. Lutz provided Honeywell a Certificate of Insurance,

supposedly extending liability coverage to Honeywell. The certificate, issued by Lutz and not by

Lexington, stated that

> Honeywell . . . [is] an additional insured on the general liability policy . . . with respect to liability arising out of ongoing and completed operations performed by the named insured on the above named project. Such insurance afforded to the additional Insured(s) shall be primary and not excess over . . . any insurance purchased . . . .

R. 8-10, Certificate of Liability Insurance. However, the insurance Lutz procured from Lexington

explained that "[a]ny coverage provided by this endorsement to an additional insured shall be *excess*

over any other valid and collectible insurance available to the additional insured . . ." R. 8-16, Letter

from Lexington Insurance Company to Honeywell at 3 (emphasis added).

On July 14, 2004, Geraldo Galvan, one of Lutz's employees, was injured when he fell off the

school's roof. The district court described the fall:

> Galvan was on the roof installing a pressure bar and flashing. He was not working on an exposed edge, but in a location where the roof met a short parapet wall. Galvan testified that he left the area where [he] had been working and went to get a drink of water from his lunch box, which was in the middle of the roof. He was walking toward the next area where he was to work when his boot became stuck in tar that had not been covered by gravel. This occurred near the edge of the roof, and Galvan lost his balance and fell to the concrete below. He injured his wrists and had surgery.

*Galvan v. Honeywell Int'l, Inc.*, No. 07-12670, 2009 U.S. Dist. LEXIS 43266, at *3 (E.D. Mich. May

21, 2009) (internal citation omitted).

Galvan received a settlement of a worker's compensation claim from Lutz's insurer, and

then, along with his wife, Lourdes Galvan, sued Honeywell. The action was filed in state court and

removed to federal court on the basis of diversity jurisdiction. The Galvans alleged that Honeywell

was negligent in failing to take reasonable safety precautions. They specifically claimed:

> There was no gravel on the sticky asphalt on which Plaintiff's foot became stuck. There were barriers along the perimeter of the roof initially at the start of the project. However, there were no flags, warnings, barriers, railings, fall arrest devices or guard rails after the first two or three days of the project. Honeywell did not inspect or

3

require any safety devices and warnings.

R. 8-11, Galvan's Answer to Honeywell's Discovery Request at 5.

The Galvans did not file a separate claim against Lutz for these same failures, as the Workers' Disability Compensation Act barred them from doing so. However, when deposed, their experts explained that Lutz had failed to use proper safety measures as it had pledged to do in the Agreement and that if such measures had been taken, Mr. Galvan would not have been injured. In response to a question regarding Lutz's failure to use proper safety measures, Mumtaz Usmen, one of the Galvans' experts, explained the preventative role perimeter guarding would have played:

> Question: I take it it's your opinion that if Lutz would be using whatever you defined as proper safety measures, that this accident could have been avoided entirely?

> Answer: Yes. For instance, if they had used perimeter guarding all around, this accident would not have occurred.

R. 11-2, Dep. of Mumtaz Usmen at 35-36. Similarly, Ronald Tyson, another of the Galvans' experts, reiterated Lutz's fault:

> Question: Correct. [I]f Lutz had complied with the provisions of [OSHA Regulation] 1926.501 B 10 would Mr. Galvan have been injured?

> Answer: More likely than not. Okay, I want to make sure that that answer is clear. More likely than not he would not have been injured.

R. 11-3, Dep. of Ronald Tyson at 77-78.

John Pyrzewski, an employee of Lutz, testified that Lutz did not use the types of materials other contractors commonly used to prevent workers from tripping on hidden hazards:

> Question: How about safety nets? Have you ever seen them?

> Answer: Yeah, I have seen them.

> Question: Have you seen them on a Lutz project?

> Answer: No, not on a Lutz project.

> Question: Do you have an understanding of when safety nets are supposed to be used?

> Answer: Like all the jobs we did so far that we probably never used them.

No. 09-1877, *Honeywell, Inc. v. Lutz Roofing Co., Inc.*

[R. 8-4, Dep. of John Pyrzewski at 26-27.]

Honeywell tendered a request for defense and indemnification to Lutz and a request to insure to Lexington. Both refused Honeywell's request. Lexington rejected Honeywell's request on the grounds that the Agreement did not specifically require the liability coverage to be primary, that Lexington did not issue the certificate of insurance, and that Honeywell's claim was within the limits of Lutz's self-insured retention. Lutz declined defense and indemnification on the basis that the indemnity language of the Agreement did not require indemnification under Michigan common law and statutory law in the light of the scope of the Galvans' suit.

In response to Lutz's refusal, Honeywell filed a motion to add Lutz as a third-party defendant to assert its indemnity claim. The Galvans filed a supplemental response in opposition to Honeywell's motion to file a third-party complaint seeking indemnity from Lutz. In their response, the Galvans stated:

> Reference must be made to plaintiff's complaint to see what Honeywell is being sued for. Honeywell is being sued for its own negligence. Pursuant to the contract terms, Lutz shall not be obligated to indemnify Honeywell for claims arising from the negligence of Honeywell. Plaintiffs are only alleging Honeywell's negligence, not Lutz's.

R. 6-5, Galvans' Supplemental Resp. to Honeywell's Motion for Leave to Amend the Pleadings and Add Parties. However, at the hearing on the motion before Magistrate Judge R. Steven Whalen, the Galvans explained that their opposition was based primarily on the delay it would cause and the resulting prejudice to their case. The Galvans conceded that Honeywell could later add Lutz as a "Non-Party at Fault."

Judge Whalen denied the motion on the grounds that the language in the Agreement provided that Lutz would be liable only "to the extent such claims . . . arise from the negligent acts of Lutz," and because under Michigan law Honeywell could only be held liable for acts for which it was responsible, the court need not have allowed Honeywell to seek indemnity from Lutz. The court explained further:

5

> The complaint itself alleges only that it was Honeywell's negligence that was the proximate cause of the injuries. To the extent that the jury were to find Honeywell partially responsible or totally responsible to whatever extent it would find Honeywell responsible, under the contract Lutz would have no – neither Lutz nor Lexington would have any duty to indemnify. So in that regard it would be futile to add them.

R. 8-16, Tr. of the Mar. 18, 2008 Hr'g Regarding Def's Mot. for Leave to Amend the Pleadings to Add Third Parties at 12. Finally, the court noted the potential delay that may be caused by the addition.

After Judge Whalen denied Honeywell's motion to add Lutz as a third-party defendant, Honeywell filed a motion to name Lutz as a "Non-Party at Fault" in the underlying action, which Judge Whalen granted. Under Michigan law, if Honeywell was found liable, the court could hold a hearing and then assess to Lutz any costs attributable to Lutz's percentage of fault.

As for the Galvans' suit against Honeywell, the district court granted Honeywell's motion for summary judgment. *Galvan*, 2009 U.S. Dist. LEXIS 43266, at *12. The court explained that, under Michigan law, the sole tort theory under which a worker can recover against a general contractor is the common work doctrine. *Id*. at *4-5. To proceed successfully under the doctrine, a plaintiff must show, among other things, that the risk the employer created affected an area used by a significant number of workers. *Id*. at *5-6. As the Galvans could not show that a sufficient number of workers had been working on the roof on the day of Mr. Galvan's injury, they could not proceed under the theory. *Id.* at *8-10. Alternatively, the Galvans claimed that they were third-party beneficiaries of the contract between the Algonac School System and Honeywell governing the construction project and, thus, they should be able to recover on account of Honeywell's alleged contractual breach. *Id.* at *10-11. As an alleged third-party beneficiary, the Galvans claimed that they were entitled to recovery on account of Honeywell's failure to find and correct any safety defects in the workspace, as the contract required. *Id*. at *11. The district court, however, did not reach the issue of Honeywell's fault, but rather found that the Galvans were not third-party beneficiaries of the contract. *Id*. at *12.

6

No. 09-1877, *Honeywell, Inc. v. Lutz Roofing Co., Inc.*

While the underlying case was pending, Honeywell filed an action for contractual indemnity against Lutz. The complaint alleged four counts. Count One, seeking a declaratory judgment, asked that the court declare that Lutz had a duty to defend and indemnify Honeywell. Count Two, seeking indemnification and defense, alleged that Lutz had breached its contractual duty to defend and indemnify Honeywell in the underlying action. Count Three alleged that Lutz breached the insurance provision of the Agreement when Lexington, Lutz's insurer, declined to insure Honeywell. Finally, Count Four alleged that Lutz, by failing to indemnify Honeywell as it requested, breached the certificate of insurance Lutz provided Honeywell.

Lutz filed a motion for judgment on the pleadings, arguing primarily that because Honeywell could only have been held liable, under Michigan law, for the fault that was its own, Lutz need not indemnify Honeywell for any damages or costs it incurred. For the same reasons, Lutz argued that it had not breached its obligation to insure. Honeywell filed a cross-motion for summary judgment as to all claims.

The motions were heard on January 13, 2009 by district judge Marianne Battani. Judge Battani denied Lutz's motion for judgment on the pleadings and granted Honeywell's motion for summary judgment as to all claims. *Honeywell Int'l, Inc. v. Lutz Roofing Co.*, No. 08-13311, 2009 U.S. Dist. LEXIS 47922, at *5-14 (E.D. Mich. June 8, 2009). The district court subsequently denied Lutz's motion for reconsideration. *Honeywell Int'l, Inc. v. Lutz Roofing Co.*, No. 08-13311, 2009 U.S. Dist. LEXIS 106425, at *9 (E.D. Mich. Nov. 16, 2009). Lutz timely appealed.

## STANDARD OF REVIEW

This court reviews de novo a trial court's ruling on a motion for judgment on the pleadings. *Miller v. Javitch, Block & Rathbone*, 561 F.3d 588, 592 (6th Cir. 2009). We also review de novo the district court's decision on a motion for summary judgment. *UAW v. Dana Corp.*, 278 F.3d 548, 554 (6th Cir. 2002). To avoid usurping the role of the fact-finder, a court deciding a summary judgment issue must accept as true the non-moving party's evidence and accept all justifiable

7

inferences that can be drawn therefrom. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Though the parties agree that de novo review is appropriate, they raise varying arguments as to the appropriate level of deference due state court decisions in a diversity case such as this. Lutz argues that, in a diversity case where the state supreme court has not issued a ruling on the matter, we are bound by the decisions of an intermediate state court. Lutz relies primarily on the Sixth Circuit's decision in *Birgel v. Board of Commissioners*, 125 F.3d 948 (6th Cir. 1997). The court's ruling in *Birgel* was premised on the fact that the federal case involved exactly the same parties and issues as a case previously ruled upon by an intermediate state court. *Id*. at 951-52. In fact, the *Birgel* court specifically stated that its decision was based on the concept of issue preclusion. *Id*. at 952. Instead, we agree with Honeywell that the appropriate level of deference due intermediate state court decisions was set out by the Supreme Court in *Commissioner v. Estate of Bosch*, 387 U.S. 456 (1967). As the Court explained:

> This Court has . . . held that while the decrees of lower state courts should be attributed some weight . . . the decision is not controlling . . . where the highest court of the State has not spoken on the point. . . . [T]his Court [has] further held that an intermediate appellate state court . . . is a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise. Thus, under some conditions, federal authority may not be bound even by an intermediate state appellate court ruling.

*Id*. at 464-65 (internal citations and quotation marks omitted); *see also Pack v. Damon Corp.*, 434 F.3d 810, 818 (6th Cir. 2010).

## DISCUSSION

The parties agree that resolution of the main issues in this case turns on the interpretation of the Subcontractor Agreement.

Subcontractor agreements are construed in accordance with the general rules for construction of contracts. *Triple E Produce Corp. v. Mastronardi Produce, Ltd.*, 530 N.W.2d 772, 776 (Mich. Ct. App. 1995). Consequently, the contract should be construed to effectuate the intentions of the

parties. *Id*. Courts determine the intent from the language of the provision itself, the parties' situation, and the circumstances surrounding the making of the contract. *Id*.; *Sherman v. DeMaria Bldg. Co.*, 513 N.W.2d 187, 190 (Mich. Ct. App. 1994).

As noted, the district court found that Lutz breached both its duty to indemnify and its duty to insure Honeywell. Lutz appeals both rulings. Additionally, Lutz, for the first time, challenges Honeywell's right to recover its attorney's fees for prosecuting this action. We discuss each issue in turn below.

### I. The Indemnity Clause Obligated Lutz to Indemnify Honeywell.

As the district court found, the indemnity provision is unambiguous. The provision requires Lutz to indemnify Honeywell for any claim that arises from the execution of the subcontract work to the extent that the claim arises or results from a "negligent act" of Lutz or its employees. In essence, the Agreement requires fault on Lutz's part or Mr. Galvan's, and the phrase "to the extent" limits Lutz's indemnity in proportion to their fault. Further, Lutz is not obligated to indemnify Honeywell for claims arising solely from Honeywell's own negligence. *See MSI Constr. Managers Inc. v. Corvo Iron Workers Inc.*, 527 N.W.2d 79, 81 (Mich. Ct. App. 1995) (interpreting a similar provision – one that required the subcontractor to indemnify the contractor "to the extent caused in whole or in part by any negligent act or omission of the [s]ubcontractor," – and finding that the language limited the extent of the subcontractor's liability to its own negligence).

Despite the provision's apparent clarity, the parties interpret the agreement in varying manners such that neither believe they should be liable for the attorney's fees Honeywell incurred in defending against the Galvans' suit.

Lutz argues that because the Agreement on its face states that Lutz can only be liable to Honeywell for its negligence and the Galvans' complaint did not allege that Lutz was negligent, Lutz cannot be responsible for Honeywell's costs in defending itself from the Galvans' suit. Lutz further argues that this conclusion is reinforced by Michigan's abolition of joint liability, after which a party

may only be held liable for costs in proportion to its percentage of fault. Accordingly, Lutz argues that under no circumstances can it be responsible for the costs Honeywell incurred in defending itself in a suit by Lutz's employee where the employee did not allege that Lutz was at fault.

Honeywell, in contrast, argues that our review cannot be constrained by the Galvans' complaint, but must be guided by the operative set of facts out of which the Galvans' claims arose. Applying this approach, Honeywell attests that the Galvans' claims were the product of Lutz's negligence. In support, Honeywell relies on the deposition testimony of the Galvans' experts and employee who testified that the accident would not have occurred had Lutz taken proper safety measures. It further argues, in support, that given the district court's ruling that it was not negligent, either Lutz or Galvan must have been negligent. Together, Honeywell argues, these facts and holdings support the conclusion that Lutz is responsible for any and all costs Honeywell incurred in defending itself from the Galvans' suit.

The district court largely accepted Honeywell's argument. In making its ruling, the court began by examining Sixth Circuit jurisprudence interpreting Michigan law governing contracts with language similar to the one in this case. The court emphasized that under the terms of the indemnification agreement, "there is no dispute that the contract between Honeywell and Lutz placed the responsibility for safety measures relative to roofing on Lutz." *Honeywell Int'l*, 2009 U.S. Dist. LEXIS 47922, at *12. The court then noted that Michigan courts have found that similarly worded agreements carry with them a duty that the subcontractor defend the contractor even if it has no duty to indemnify because a jury could conclude that the subcontractor or the plaintiff was comparatively negligent. *Id.* (citing *Turner Constr. Co. v. Robert Carter Corp.*, No. 97-1394, 1998 U.S. App. LEXIS 20544, at *6 (6th Cir. Aug. 17, 1998)). Accordingly, "even if the Court had found Honeywell solely negligent on the facts, and therefore contractually barred from indemnification, Lutz would owe Honeywell a duty to defend under the circumstances presented." *Id.*

The district court further noted the Michigan Court of Appeals' decision in *Walbridge Co. v. Walcon Corp.*, 525 N.W.2d 489, 492 (Mich. Ct. App. 1995), in which a general contractor was sued under similar circumstances. Accepting the reasoning of this case, the district court held that the contractual provision barring indemnification by the subcontractor "did not apply absent the actual establishment of a breach of duty by the general contractor." *Id*. at *13. Accordingly, as Honeywell had not been found to have breached any duty, Lutz retained a responsibility to defend Honeywell. *Id*.

We agree with the district court's conclusion.

In *Turner Construction*, we considered the claim of a general contractor who sought to compel indemnification from a subcontractor for the costs associated with defending a claim of injury caused by one of the subcontractor's employees. 1998 U.S. App. LEXIS 20544, at *6. Like this case, *Turner Construction* involved the application of Michigan contract law. *Id*. at *8. Though the court eventually rejected the general contractor's request for indemnification, it provided useful guidance as to when a duty to indemnify should apply in the context of attorney's fees, and on what basis the court should make the determination that such a duty exists:

> Thus, even though [the general contractor] was the only defendant named by [the injured party] in his action, that fact standing alone, would not relieve [the subcontractor] of its contractual duty to defend [the general contractor]. [The subcontractor] had no obligation to defend [the general contractor] because based upon the facts alleged in the underlying complaint, [the subcontractor] could not have owed [the general contractor] indemnification.

*Id*. at *14.

Accordingly, the court explicitly rejected the argument advanced by Lutz that the injured party's decision to name or not name the subcontractor in its action is determinative as to whether a duty to indemnify exists. Rather, the focus should be on the general source of the injury described in the complaint. Though *Turner Construction* involved a clause that imposed liability on the subcontractor for all injuries "arising out of or occurring in connection with the execution of the [subcontractor's] Work," *id*. at *2, we see nothing in the *Turner* court's reasoning or Lutz's briefs

that would limit the rule from *Turner* to cases involving identical indemnity clauses. Nor can we see any reason why *Turner* should be limited as such. While contracts that require indemnification where the injury "arises out of" the subcontractor's work do not require that the subcontractor have been negligent, they nonetheless require that the subcontractor have caused the injury. *Empire Fire & Marine Ins. Co. v. Minuteman Int'l, Inc.*, No. 274660, 2008 Mich. App. LEXIS 101, at *2 (Mich. Ct. App. Jan. 15, 2008) (collecting cases). Accordingly, Lutz's argument as to the determinative nature of the injured party's complaint would be applicable where the clause merely required that the injury have arisen from the subcontractor's work; a subcontractor could argue that because it was not named in the injured party's suit against the general contractor it could not have caused the injury and thus could not be responsible for the general contractor's costs in defending itself. Nonetheless, in *Turner*, we refused to be limited by the precise wording of the injured party's complaint. If a contract requires negligence on the part of the subcontractor, as the contract does here, this imposes an additional requirement that the district court determine whether, based on the facts before it, the subcontractor not only caused the harm, but was also at fault. However, it has no effect on the scope of facts the court may examine in determining whether such fault exists.

We are further persuaded by the fact that our analysis is consistent with the general jurisprudential approach of Michigan court decisions issued after our decision in *Turner Construction*. *See generally Empire Fire & Marine Ins.*, 2008 Mich. App. LEXIS 101, at *5 ("We agree with Minuteman that the trial court erred to the extent it found the allegations in Empire's complaint were dispositive of Minuteman's third-party complaint for indemnification of its litigation expenses, including attorney fees and defense costs."); *Westfield Ins. v. Mitchell*, No. 209558, 2000 Mich. App. LEXIS 2231, *2 (Mich. Ct. App. May 30, 2000) ("[T]he duty to defend and indemnify is not determined solely by the terminology used in the pleadings. Rather, it is necessary to focus on the basis for the injury and not the nomenclature of the underlying claim in order to determine whether coverage exists." (internal quotation marks and citations omitted)).

Finally, we note that adherence to *Turner Construction* respects the practical realities of tort litigation. In a case such as this, where the injured party is barred by the Workers' Disability Compensation Act from pursuing claims against his employer, the subcontractor, a rule based solely on whether the complaint named the subcontractor would needlessly elevate form over substance.[1]

Here, the Galvans alleged in their complaint that the injury occurred when Honeywell failed to take reasonable safety precautions on the roof on which Mr. Galvan was working. Under the terms of the indemnity agreement, Lutz specifically agreed to implement appropriate safety measures on the roof, namely the placement of safety belts and warning signs. Accordingly, the Galvans' suit specifically implicated Lutz's negligence regardless of whether Lutz was named as a party in their complaint.

Lutz, in response, relies almost exclusively on the Michigan Court of Appeals' decision in *Ormsby v. Capital Welding, Inc.*, 660 N.W.2d 730 (Mich. Ct. App. 2003), *rev'd on other grounds*, 684 N.W.2d 320 (Mich. 2004). In *Ormsby*, the court dismissed the general contractor's third-party complaint seeking indemnity from the subcontractor for any damages assessed to it in a suit against it by an injured worker. *Id*. at 745-46. The court reasoned that because Michigan had abolished joint and several liability, in favor of comparative negligence, the general contractor could only be held liable for the portion of his costs associated with his negligence. *Id*. at 745. Accordingly, as the general contractor would not have to pay for any portion of the damages for which the subcontractor was responsible, the general contractor could not seek indemnity from the subcontractor. *Id*. at 745-46. *Ormsby* is clearly distinguishable in that the general contractor did not seek, and the court did not address, any costs or fees the general contractor might incur in defending the suit.

---

[1] Furthermore, the record undercuts Lutz's argument as to why the Galvans opposed adding Lutz to the case. The transcript from the hearing regarding Honeywell's motion to add Lutz as a third-party defendant reveals that the Galvans opposed adding Lutz to the case not because they believed Lutz to be free of fault, as Lutz speculates, but rather because they believed the addition would further delay the case and thereby prejudice them.

Having established that Lutz may be liable for the costs Honeywell incurred despite not having been named as a defendant by the Galvans, the only remaining question is whether Lutz was in fact negligent. The district court concluded that Lutz was negligent, relying in large part on the fact that Honeywell was not found liable. Accordingly, it reasoned that either Lutz or Galvan must have been negligent. While we have questions as to whether the dismissal of the Galvans' case against Honeywell necessitates that Lutz or Galvan must be found negligent,[2] an independent review of the evidence before the court supports a finding of negligence on Lutz's part.

As noted above, testimony from the Galvans' experts and one of Lutz's employees demonstrates that Lutz failed to follow applicable safety protocols and this failure caused Mr. Galvan's injury. Mumtaz Usmen, one of the Galvans' experts, testified that Lutz failed to use proper safety measures, namely perimeter guarding, on the roof. Had Lutz used such guarding, Usmen stated, the accident would not have occurred. Likewise, Ronald Tyson, another of the Galvans' experts, testified that Lutz failed to comply with an applicable federal safety regulation. Had Lutz followed this requirement, Tyson explained, more likely than not, Mr. Galvan would not have been injured. Similarly, John Pyrzewski, an employee of Lutz, testified that, despite the fact that other employers commonly used safety nets to protect workers from the type of hidden hazard that caused Mr. Galvan's injury, Lutz never used such nets.

---

[2] The district court, in making its negligence determination, relied primarily on the Michigan Court of Appeals' decision in *Walbridge*, 525 N.W.2d at 492, which is inapplicable to the facts of this case. As Lutz correctly points out, the indemnity provision at issue in *Walbridge* was broader than the one in this case in that it provided that the general contractor would be indemnified as long as the claims arose out of the work of the subcontractor and the general contractor was not solely negligent. *Id*. at 492 n.1. Said differently, the sole bar to the general contractor's indemnification for harm resulting from the subcontractor's work was if the general contractor was itself negligent in its performance. Accordingly, where the general contractor was found not negligent, it was reasonable to assess costs on the subcontractor on this basis alone. Here, as Lutz correctly notes, it is not as clear that the general contractor has the right to indemnification simply because it was not negligent. Under the present Agreement's indemnification clause, for Honeywell to be due indemnification, we must find that the claim was the product of Lutz or Mr. Galvan's negligence, i.e., that they breached an applicable duty under the circumstances.

Lutz, in response, presents no evidence that it complied with these requirements, that it used such safety materials, or that its failure to do such did not cause Mr. Galvan's injuries. Nor do we see any evidence in the record suggesting otherwise. Lutz, as mentioned, relies wholly upon the scope of the Galvans' suit from its perspective. However, as discussed above, we reject the limited view that Lutz advocates. Examining the operative set of facts outlined in the complaint, there is no question that Lutz's conduct was the source of Mr. Galvan's injuries. Accordingly, having before us convincing evidence of Lutz's negligence, we affirm the district court's grant of Honeywell's motion for summary judgment.

**II. Lutz Breached its Contractual Duty to Insure.**

Lutz also argues that the district court erred in denying its motion for judgment on the pleadings and granting Honeywell's cross-motion for summary judgment as to whether Lutz breached its duty to insure Honeywell. The Agreement provided that Lutz was required to procure insurance for the site, name Honeywell as an "additional insured," and provide a certificate evidencing such. Lutz delivered a certificate of insurance extending liability coverage to Honeywell and stating that the coverage would be primary. Nevertheless, Lexington, Lutz's insurer, denied Honeywell coverage, because the policy Lutz purchased only provided excess coverage for Honeywell. Furthermore, Lexington did not issue the certificate Lutz provided Honeywell. Therefore, the district court denied Lutz's motion.

Lutz raises three arguments on appeal. First, Lutz argues that it met its obligation in naming Honeywell as an additional insured. It argues that its mere provision of a certificate, which Lutz produced, on which it added Honeywell's name was sufficient to meet this obligation.

The term "additional insured" is not defined in the Agreement. Nor does the Agreement delineate the scope of coverage to be provided to an "additional insured." Michigan courts have held that if a term is ambiguous, the fact-finder may look to relevant extrinsic evidence, such as "the parties' conduct, the statements of its representatives, and past practice to aid in interpretation."

15

*Klapp v. United Ins. Grp. Agency, Inc.*, 663 N.W.2d 447, 454 (Mich. 2003) (quoting *Penzien v. Dielectric Prods. Eng'g Co., Inc.*, 132 N.W.2d 130, 132 (1965)). In this case, available extrinsic evidence suggests that Lutz, rather than satisfying its obligation, failed to meet it. The certificate Lutz provided Honeywell specifically stated that the coverage it had procured for Honeywell was primary. Accordingly, we can conclude that the parties intended that Honeywell, as an additional insured, be provided with primary coverage, as opposed to the excess coverage Lutz actually procured.

Furthermore, we are cautioned against adopting the interpretation Lutz advocates by its practical implications. Were we to accept Lutz's argument that merely providing Honeywell a certificate was all that the Agreement required, the provision requiring Lutz to name Honeywell as an additional insured would be superfluous. The same amount of coverage would exist regardless of whether Lutz provided Honeywell a certificate with or without it named as an additional insured. Michigan courts have rejected interpretations which render contractual provisions meaningless. *See Port Huron Educ. Ass'n MEA/NEA v. Port Huron Area Sch. Dist.*, 550 N.W.2d 228, 237 (Mich. 1996) (rejecting plaintiff's interpretation where its effect would have made the provision superfluous).

Second, Lutz argues that the insurance Honeywell requested would have violated public policy, in light of the Michigan Court of Appeals' decision in *Peeples v. City of Detroit*, 297 N.W.2d 839 (Mich. Ct. App. 1980). In *Peeples*, the court held that it would violate Michigan law for a subcontractor to indemnify a general contractor where the general contractor's sole negligence was the cause of the damage or injury. *Id*. at 843. The Michigan Court of Appeals subsequently provided further interpretation of the rule it set out in *Peeples*, explaining that a clause which does not explicitly address the general contractor's sole negligence will not be void unless the general contractor is seeking redress for a matter in which it was solely negligent. *Fischbach-Natkin Co. v.*

16

*Power Process Piping, Inc.*, 403 N.W.2d 569, 573 (Mich Ct. App. 1987). As noted above, Honeywell was not found negligent.[3] Accordingly, *Peeples* does not apply.

Finally, we reject Lutz's third argument, that because Lutz met its obligation under the contract, Honeywell's dispute is with Lexington. It is merely derivative of and dependent on Lutz's first argument. Thus, this argument is also meritless.

### III. Lutz Waived its Argument Regarding the Amount of Attorney's Fees it Owes.

Finally, the parties dispute whether Honeywell is entitled to recovery of attorney's fees incurred while prosecuting this action. Lutz argues that Michigan courts follow the "American rule" pursuant to which a prevailing party may not recover attorney's fees from a losing party. Honeywell, while admitting that Michigan courts have generally adhered to this rule, argues that this case is distinguishable from those that have come before as it involves a breach of contract claim to enforce an indemnity provision. The provision of fees, Honeywell argues, would merely return Honeywell to the position it would have been if Lutz had met its obligation to Honeywell under the Agreement.

Ultimately, we need not decide the issue as Lutz failed to raise this argument before the district court in either its motion for judgment on the pleadings or its response to Honeywell's cross-motion for summary judgment. This Court has held that:

> [We] will not review issues raised for the first time on appeal. Our function is to review the case presented to the district court, rather than a better case fashioned after a district court's unfavorable order. The court will consider an issue not raised below only when the proper resolution is beyond doubt or a plain miscarriage of justice might otherwise result.

*DaimlerChrysler Corp. Healthcare Benefits Plan v. Durden*, 448 F.3d 918, 922 (6th Cir. 2006)

---

[3] In Lutz's discussion of whether it must indemnify Honeywell for the costs Honeywell incurred while defending itself from the Galvans' suit, Lutz argues that Honeywell was never found not to be negligent, but rather was merely found to have not owed a duty to Mr. Galvan. This argument is internally inconsistent. For a person or entity to have acted negligently under Michigan law, it must have breached a duty it owed. *See Lorencz v. Ford Motor Co.*, 483 N.W.2d 844, 846 (Mich. 1992) (stating that in order to establish a negligence claim, a plaintiff must prove: (1) duty, (2) breach of duty, (3) causation, and (4) damages). Accordingly, by definition, a person cannot have acted negligently where he owed no duty. The district court correctly found that "Honeywell was not negligent." *Honeywell Int'l,* 2009 U.S. Dist. LEXIS 106425, at *8.

No. 09-1877, *Honeywell, Inc. v. Lutz Roofing Co., Inc.*

(internal citations omitted); *see also Enertech Elec., Inc. v. Mahoning Cnty. Comm'rs*, 85 F.3d 257, 261 (6th Cir. 1996) ("When a party fails to present an argument to the district court, we have discretion to resolve the issue only where the proper resolution is beyond any doubt, or where injustice might otherwise result." (citation omitted)).  Given the lack of a decision directly on point or the presentation of any reason to believe a miscarriage of justice would result, we choose the better course of declining to review this issue.  *Barber v. Louisville & Jefferson Cnty. Metro. Sewer Dist.*, 295 F. App'x 786, 791 (6th Cir. 2008) (refusing to consider claim raised for the first time on appeal because, even though the issue was "a pure question of law, the existence of such a claim [was] not 'clear and beyond doubt'").

## CONCLUSION

For the foregoing reasons, the district court's denial of Lutz's motion for judgment on the pleadings and grant of Honeywell's cross-motion for summary judgment are, hereby, **AFFIRMED**.