*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PAMELA DOWNER, Personal Representative of the
ESTATE OF NORMA JEAN DOBBINS,

UNPUBLISHED
February 21, 2023

Plaintiff,

v

GDC-CRANBROOK LIMITED DIVIDEND
HOUSING ASSOCIATION, LLC,

No. 359580
Washtenaw Circuit Court
LC No. 19-000307-NO

Defendant/Third-Party Plaintiff-
Appellee,

DEPADUA CONSTRUCTION, LLC,

Defendant/Third-Party
Defendant/Cross-Plaintiff-Appellant,

and

SCHINDLER ELEVATOR CORPORATION,
Defendant/Third-Party Defendant/
Cross-Defendant-Appellee.

Before: CAVANAGH, P.J., and SERVITTO and GARRETT, JJ.

PER CURIAM.

In this contractual indemnity action, third-party defendant, cross-plaintiff Depadua Construction, LLC (Depadua Construction) appeals as of right judgments entered in favor of third-party plaintiff GDC-Cranbrook Limited Dividend Housing Association, LLC (Cranbrook) and cross-defendant Schindler Elevator Corporation (Schindler Elevator). We vacate those judgments. Depadua Construction challenges (1) an order granting third-party plaintiff Cranbrook's motion for summary disposition of its third-party claim against Depadua Construction and holding that Depadua Construction must defend and indemnify Cranbrook, which we reverse; (2) an order denying Depadua Construction's motion for summary disposition of its cross-claim against Schindler Elevator—which we affirm, and also holding that Depadua Construction must defend

-1-

and indemnify Schindler Elevator, which we reverse; and (3) an order granting Cranbrook's and Schindler Elevator's motions for attorney fees and costs, which we reverse. Thus, we reverse in part, affirm in part, vacate the judgments, and remand for proceedings consistent with this opinion.

## I. BACKGROUND

In March 2019, Pamela Downer, as personal representative of the estate of Norma Jean Dobbins (plaintiff), filed a complaint against Cranbrook. Dobbins had been a resident of Cranbrook Tower, Cranbrook's senior housing residential facility. At some time before October 2, 2017, plaintiff alleged, Cranbrook or its agents "placed electrical cord(s) covered by cardboard and a dark colored mat on the first floor of the building directly in front of the only working elevator." On October 2, 2017, Dobbins tripped and fell "over the electrical cord/cardboard, mat combination" and suffered injuries, including a fractured femur and hip. Plaintiff averred that Dobbins died on February 1, 2018, from complications arising from her injuries sustained in this fall. Thereafter, this premises liability and wrongful death complaint was filed against Cranbrook. In July 2019, plaintiff filed a first amended complaint which reflected the proper legal name of defendant Cranbrook.

In September 2019, Cranbrook filed a third-party complaint, naming Depadua Construction and Schindler Elevator as third-party defendants. Cranbrook averred that it had entered into a contract with Depadua Construction for the performance of certain work at Cranbrook Tower and the contract required Depadua Construction to indemnify and hold harmless Cranbrook for claims like the one asserted by plaintiff in this premises liability case. Cranbrook further averred that Depadua Construction entered into a subcontract with Schindler Elevator for the performance of certain work at Cranbrook Tower and the subcontract required Schindler Elevator to indemnify and hold harmless Cranbrook for claims like the one asserted by plaintiff in this premises liability case. Nevertheless, Cranbrook averred, both Depadua Construction and Schindler Elevator failed and refused to defend, indemnify, and hold harmless Cranbrook with regard to plaintiff's lawsuit. In Count I, Cranbrook asserted a breach of contact claim. In Count II, Cranbrook asserted a specific performance claim, and in Count III, Cranbrook sought indemnity for all damages incurred by Cranbrook, including costs, fees, and monies paid to plaintiff in the premises liability case. The attachments to Cranbrook's third-party complaint included the contract documents between Cranbrook and Depadua Construction and the subcontract agreement between Depadua Construction and Schindler Elevator.

In November 2019, Depadua Construction filed a cross-claim against Schindler Elevator, averring that Depadua Construction did not actually perform the construction work at Cranbrook Tower; instead, it entered into a subcontract agreement with Schindler Elevator which actually performed the construction work. And pursuant to that subcontract, Schindler Elevator was required to defend, indemnify, and hold harmless Depadua Construction with regard to any and all claims arising in connection with work performed under the subcontract but had failed and refused to do so. In Count I, Depadua Construction asserted a breach of contract claim. In Count II, Depadua Construction asserted a specific performance claim, and in Count III Depadua Construction sought indemnity for all damages incurred by it, including costs, fees, and monies paid to plaintiff in the premises liability case.

In December 2019, Schindler Elevator filed a notice of non-party at fault, asserting that Windy City Drilling, Inc. (Windy City Drilling) may be wholly or partially at fault and thereby contributed to Dobbins's injuries. Schindler Elevator stated that Windy City Drilling had been drilling an elevator hole/well at Cranbrook Tower and alleged that it "ran a covered water supply hose across the floor to its job site and covered that hose with a floor mat and large pieces of cardboard," which had been left in place after Windy City Drilling finished working for the day and left the site.

On February 1, 2021, Cranbrook filed a motion for summary disposition as to plaintiff's claims, arguing in relevant part that Cranbrook did not have possession and control of the construction area where Dobbins allegedly fell; rather, Cranbrook contracted with Depadua Construction to conduct particular repairs and equipment replacement, and Depadua Construction subcontracted with Schindler Elevator to perform aspects of that project—particularly elevator services. Therefore, Cranbrook could not be liable for a defect in the premises that was created by these contractors which had possession and control of that allegedly dangerous area. Moreover, Cranbrook argued, plaintiff's claims were precluded by the open and obvious doctrine. Accordingly, Cranbrook was entitled to summary disposition of plaintiff's claims.

On February 1, 2021, Cranbrook also filed a motion for summary disposition under MCR 2.116(C)(10) as to its claims against third-party defendants Depadua Construction and Schindler Elevator. Cranbrook argued in relevant part that Depadua Construction entered into a contract with Cranbrook which provided for indemnification of Cranbrook by Depadua Construction for claims or damages "caused by the negligent acts or omissions of [Depadua Construction], a Subcontractor, anyone directly or indirectly employed by them or anyone for whose acts they may be liable . . . ." Further, Cranbrook argued, both Depadua Construction and Schindler Elevator were required to include Cranbrook as an additional insured on their insurance policies with respect to any liability arising out of their work. Nevertheless, Cranbrook argued, both Depadua Construction and Schindler Elevator refused to defend, indemnify, and hold Cranbrook harmless with regard to plaintiff's claims. Accordingly, Cranbrook argued that it was entitled to summary disposition of its claims against Depadua Construction and Schindler Elevator.

On February 9, 2021, third-party defendant and cross-plaintiff Depadua Construction filed a motion for summary disposition under MCR 2.116(C)(10), arguing in relevant part that Cranbrook's third-party claim against it fails as a matter of law because their contract did not state that Depadua Construction must defend or indemnify Cranbrook in a case like plaintiff's case, where there is no evidence as to what caused Dobbins' fall. Further, Depadua Construction argued, cross-defendant Schindler Elevator had possession and control of the construction area where Dobbins allegedly fell and the subcontract between Depadua Construction and Schindler Elevator required that Schindler Elevator defend and indemnify Depadua Construction against any and all claims arising from work being performed under their subcontract agreement—as in this case. Accordingly, Depadua Construction argued that it was entitled to summary disposition, dismissing Cranbrook's third-party complaint and further holding that Schindler Elevator must defend and indemnify Depadua Construction as to all damages arising from its subcontracted work as set forth in its cross-claim against Schindler Elevator.

On March 2, 2021, third-party defendant and cross-defendant Schindler Elevator filed a motion for summary disposition, arguing in relevant part that Schindler Elevator's subcontractor,

Windy City Drilling, performed well-drilling work at Cranbrook Tower pursuant to a separate "Upgrade Order Agreement" entered into between Depadua Construction and Schindler Elevator with respect to well drilling for the elevators at Cranbrook Tower. In this Upgrade Order Agreement—which contained an integration clause—Depadua Construction agreed to "defend, indemnify, and hold Schindler harmless from and against any claims . . . arising out of [that Agreement] except to the extent caused by or resulting from the sole and direct fault of Schindler." Schindler Elevator subcontracted the well-drilling to Windy City Drilling and it was performing that work at the time that Dobbins allegedly fell; Schindler Elevator was not performing work under the original subcontract agreement at that time. Accordingly, Schindler Elevator argued, Cranbrook's and Depadua Construction's claims against it must be dismissed.

On March 12, 2021, third-party plaintiff Cranbrook filed a response to Depadua Construction's motion for summary disposition, arguing in relevant part that both Depadua Construction and Schindler Elevator were contractually obligated to indemnify and hold Cranbrook harmless from any and all claims arising out of their work and they wholly failed in that regard, breaching their contractual obligations. Accordingly, Cranbrook requested that Depadua Construction's motion for summary disposition be denied and that both it and Schindler Elevator be ordered to indemnify and hold Cranbrook harmless for plaintiff's claims, including for costs and attorney fees.

On March 15, 2021, third-party defendant Depadua Construction filed a response to Cranbrook's motion for summary disposition, arguing in relevant part that it was not obligated by their contract to defend or indemnify Cranbrook with regard to plaintiff's lawsuit. The contract does not include a duty to defend clause. And indemnification is owed only if there was a negligent act and there is no evidence as to what caused Dobbins to fall; thus, there was no evidence of negligence. Further, Depadua Construction did not own or control the premises. Accordingly, Depadua Construction argued that Cranbrook's motion should be denied and that summary disposition be granted in favor of Depadua Construction.

On March 15, 2021, cross-plaintiff Depadua Construction filed a response to Schindler Elevator's motion for summary disposition, arguing in relevant part that the terms of the Upgrade Order Agreement were ambiguous, including as to who the contracting parties were and which party was at fault for plaintiff's alleged accident. Therefore, issues of fact precluded the entry of summary disposition in favor of Schindler Elevator.

On March 16, 2021, third-party defendant and cross-defendant Schindler Elevator filed a response to Cranbrook's and Depadua Construction's motions for summary disposition, arguing in relevant part that neither Cranbrook nor Depadua Construction were entitled to summary disposition because they both rely on a subcontract agreement between Schindler Elevator and Depadua Construction but Schindler Elevator was not performing the work outlined in the subcontract agreement, i.e., hydraulic jack replacement, at the time of plaintiff's alleged fall. In fact, well-drilling work was being performed by subcontractor Windy City Drilling at that time. And, as set forth in the fully integrated Upgrade Order Agreement, Schindler Elevator is to be held harmless for any claims arising from the well-drilling work. Accordingly, Schindler Elevator argued, because Dobbins's alleged fall arose from the well-drilling work, it was entitled to summary dismissal of Cranbrook's and Depadua Construction's claims.

On March 17, 2021, plaintiff filed a response to Cranbrook's motion for summary disposition, arguing in relevant part that the hazardous condition that caused Dobbins's injuries was not open and obvious but, even if it was, a special aspect existed because it was the only elevator she could use to get to her third-floor apartment. Accordingly, Cranbrook's motion should be denied. The issue of possession and control argued by Cranbrook was not addressed.

On March 24, 2021, oral arguments were held on Cranbrook's motion for summary disposition as to plaintiff's claims. The trial court agreed with Cranbrook that Cranbrook did not have possession and control of the area where the contractual work was being performed by another party, and which was the location of Dobbins's fall; therefore, Cranbrook was entitled to summary disposition of plaintiff's claims. Thereafter, plaintiff requested the opportunity to file an amended complaint, which was granted. On April 12, 2021, an order was entered granting Cranbrook's motion for summary disposition and permitting plaintiff to file an amended complaint to add new defendants.

On April 15, 2021, plaintiff filed a second amended complaint which named Depadua Construction and Schindler Elevator as defendants in this premises liability and wrongful death action. Plaintiff averred that defendants exercised control and possession of the premises at issue and they or their agents placed electrical cords or a water hose covered by cardboard and a dark-colored mat directly in front of the elevator which caused Dobbins to trip and fall, resulting in injuries that led to her death.

On May 5, 2021, Schindler Elevator filed a motion for summary disposition under MCR 2.116(C)(7), arguing in relevant part that plaintiff's second amended complaint was barred by the statute of limitations because the claim was asserted more than three years after Dobbins passed away and more than two years after letters of authority were issued to plaintiff as personal representative of Dobbins's estate. On May 14, 2021, Depadua Construction filed a concurrence with regard to this motion for summary disposition and, also, filed its own motion for summary disposition under MCR 2.116(C)(7). On May 14, 2021, Schindler Elevator filed a notice of non-party at fault, naming Windy City Drilling as a nonparty which may be wholly or partially at fault for the accident at issue.

On June 9, 2021, the trial court heard oral arguments on Cranbrook's motion for summary disposition as to its third-party claims against Depadua Construction and Schindler Elevator. At that time the court stated that plaintiff conceded as to Schindler Elevator's and Depadua Construction's motions for summary disposition under MCR 2.116(C)(7). The parties then argued consistently with their briefs, including that Depadua Construction argued that the contract between it and Cranbrook did not include a duty to defend but only included a duty to indemnify which would be triggered if Depadua Construction was proven negligent. In this case, plaintiff's case was dismissed; thus, there was no finding that Depadua Construction was negligent. Moreover, Depadua Construction argued, Schindler Elevator had possession and control of the subject area, and thus, is the party who is liable to defend and indemnify both Cranbrook and Depadua Construction. Schindler Elevator disagreed that it was liable, arguing that the Upgrade Order Agreement pertained to the well-drilling work that was being performed at the time of Dobbins's fall and it did not perform the well-drilling work. The hearing concluded with the court taking the matter under advisement.

-5-

On June 24, 2021, the trial court entered an order granting Schindler Elevator's and Depadua Construction's motions for summary disposition under MCR 2.116(C)(7) and dismissing plaintiff's second amended complaint.

On July 7, 2021, the trial court heard oral arguments on Depadua Construction's motion for summary disposition as to Cranbrook's third-party claim and Depadua Construction's cross-claim against Schindler Elevator, and the parties relied on their briefs. Thereafter the court stated that it had reviewed the issues and concluded that the relevant contracts were not ambiguous. Further, the court stated, the contract language ultimately led to the following results:

> That DePadua must defend and indemnify Schindler. The well drilling excavation work was specifically excluded from the scope of the work under the subcontract. The [Upgrade Order Agreement (UOA)] specifically applies to the well drilling slash excavation. The UOA expressly supersedes the subcontract and the UOA requires purchaser to defend and indemnify Schindler. DePadua, therefore, is on the hook there. Schindler must indemnify nobody. Schindler is required under the contract documents to defend and indemnify Cranbrook and DePadua from or for losses connected with work done under quote this agreement close quote, which is the subcontract. The excavation work is not specifically excluded from this agreement as the agreement was amended with the subagreement.
>
> Therefore, Schindler is not on the hook to defend and indemnify Cranbrook. DePadua is required to indemnify Cranbrook for losses arising out of the work but only to the extent that they are caused by DePadua or a subcontractor's negligence. The question raised there is was the accident caused by negligence? It's [sic] the duty to indemnify triggered by the mere allegation of negligence and the Court finds that yes, it is. It would be nonsensical when we're talking about here if the contract were to read that no cost of defense or no indemnification is required until and unless there's a finding of negligence, that there would be different issues arising there if the case had gone to trial and had been determined that there was negligence and other issues meaning that there would be indemnification for any payment that would be required, but as I said the contract language would be nonsensical to require that there's a finding of negligence before the requirement to defend is implicated where there is an allegation of negligence.
>
> Since losses furthermore includes attorneys fees and attorneys fees certainly have been incurred, the - - DePadua is obligated to indemnify Cranbrook.

On July 15, 2021, the trial court entered an order granting Cranbrook's motion for summary disposition as to its third-party claim against Depadua Construction and denying Depadua Construction's motion for summary disposition as to that third-party claim and its cross-claim against Schindler Elevator. The court further ordered that Depadua Construction had to defend and indemnify both Cranbrook and Schindler Elevator. The matter remained pending as to the issues of reimbursement of attorney fees and costs.

On August 4, 2021, Depadua Construction filed a motion for reconsideration, arguing in relevant part that there could be no duty to indemnify Cranbrook where no negligence was

established with respect to the work performed, and there could be no duty to defend and indemnify Schindler Elevator because Schindler Elevator never filed or pleaded a claim for such relief from Depadua Construction. Moreover, the Upgrade Order Agreement was merely a change order and did not supersede the prior subcontractor agreement between Depadua Construction and Schindler Elevator.

On October 12, 2021, the trial court entered an order denying Depadua Construction's motion for reconsideration, holding that the same issues, evidence, and arguments were previously considered and the court was not persuaded that palpable error occurred.

On November 2, 2021, Depadua Construction filed a motion raising objections to attorney fees and costs submitted for reimbursement by Cranbrook and Schindler Elevator, arguing in relevant part that the attorney fees and costs purportedly incurred in defending the underlying premises liability case were not reasonable. For example, Depadua Construction billed a total of $14,203.83 in costs and attorney fees and—for almost the same period of time—Cranbrook claimed a total of $47,346.80 and Schindler Elevator claimed $36,021.90 in costs and attorney fees. Therefore, Depadua Construction requested that a reasonable hourly rate be determined, for a reasonable number of hours, as are supported by detailed records. And, further, that Schindler Elevator's bill of costs be rejected in its entirety because it never made a claim for defense or indemnity.

On November 8, 2021, Schindler Elevator filed a motion for attorney fees and costs, arguing in relevant part that it was entitled to recover $36,021.90 in attorney fees and costs because Depadua Construction was required to indemnify Schindler for any lawsuits, costs, and expenses arising out of the Upgrade Order Agreement. Relying on the principles of law set forth in *Smith v Khouri*, 481 Mich 519, 522; 751 NW2d 472 (2008) and *Wood v Detroit Auto Inter-Ins Exch*, 413 Mich 573, 588; 321 NW2d 653 (1982), Schindler Elevator argued that its attorney fees and costs were reasonable for the work expended during this year-and-a-half complicated litigation involving numerous pleadings, discovery requests, and motions.

On November 16, 2021, Cranbrook filed a response to Depadua Construction's motion raising objections to attorney fees and costs submitted by Cranbrook and Schindler Elevator, arguing in relevant part that the parties' contract—specifically, Section 3.18—provided for the payment of attorney fees through indemnification. Therefore, no court rule or statutory provision need justify the award; rather, the parties' contract justified the award as damages, not costs, so the award can be in excess of taxable costs provided by rule or statute. In any case, Cranbrook argued, the attorney fees submitted for reimbursement were reasonable under prevailing law in that the hourly rate was reasonable and the number of hours expended were reasonable, as demonstrated in the detailed billing records.

On November 17, 2021, Cranbrook filed a motion for an award of attorney fees and costs, arguing in relevant part that it was entitled to recover $47,346.80 in attorney fees and costs because Depadua Construction was required to indemnify and hold Cranbrook harmless under their contract. Cranbrook argued that its attorney fees and costs were reasonable under prevailing law, including that the hourly rate was reasonable and the number of hours expended in this complex matter were reasonable as demonstrated in the detailed billing records.

On November 18, 2021, Schindler Elevator filed a response to Depadua Construction's motion regarding objections to costs and attorney fees, arguing in relevant part that its bill of costs was detailed and reasonable yet Depadua Construction claimed, without any justification, that the bill of costs was excessive. Schindler Elevator argued that it set forth its rationale for the reasonable hourly rate submitted, as well as the reasonable number of hours spent on the defense of this matter. Moreover, contrary to Depadua Construction's claim, Schindler Elevator was not required to file a counter-complaint requesting attorney fees because attorney fees under a contractual provision need not be specifically pleaded.

On November 24, 2021, the trial court heard oral arguments on the motions pertaining to attorney fees and costs. The parties argued consistently with their briefs and the court concluded that because the indemnification clause in the respective contracts between the parties required that incurred attorney fees and costs be reimbursed, the court was not required to determine a reasonable hourly rate or review the hours expended on the case for reasonableness. Accordingly, the court stated that if the attorney fees and costs were actually incurred by Cranbrook and Schindler Elevator, they must be reimbursed by Depadua Construction. Counsel for Cranbrook and Schindler Elevator confirmed that their verified bills of costs reflected fees and costs actually incurred and the trial court then held that Depadua Construction must reimburse those attorney fees and costs.

On December 3, 2021 the trial court entered an order granting Schindler Elevator's and Cranbrook's motions for attorney fees and costs. Accordingly, a judgment was entered in favor of Schindler Elevator, and against Depadua Construction, in the amount of $36,021.90, and a judgment was entered in favor of Cranbrook, and against Depadua Construction, in the amount of $47,346.80. This appeal followed.

## II. ANALYSIS

Depadua Construction argues that it was not contractually obligated to defend and indemnify either Cranbrook or Schindler Elevator, and thus, the trial court erred in granting Cranbrook's motion for summary disposition as to its third-party claim and erred in denying Depadua Construction's motion for summary disposition as to its own cross-claim against Schindler Elevator. Therefore, Depadua Construction argues, these parties were not entitled to attorney fees and costs, but even if they were, the trial court erred in awarding them the full amount of their claimed attorney fees and costs without conducting an evidentiary hearing.

### A. STANDARD OF REVIEW AND APPLICABLE LAW

This Court reviews de novo a trial court's decision on a motion for summary disposition. *Johnson v Recca*, 492 Mich 169, 173; 821 NW2d 520 (2012). A motion for summary disposition under MCR 2.116(C)(10) tests the factual support for a claim. *Stone v Auto-Owners Ins Co*, 307 Mich App 169, 173; 858 NW2d 765 (2014) (citation omitted). The pleadings, affidavits, depositions, and other documentary evidence is reviewed in the light most favorable to the nonmoving party to determine whether a genuine issue of material fact exists for the jury to decide. *Walsh v Taylor*, 263 Mich App 618, 621; 689 NW2d 506 (2004). If reasonable minds could differ on an issue, a genuine issue of material fact exists. *Allison v AEW Capital Mgt, LLP*, 481 Mich 419, 425; 751 NW2d 8 (2008).

Principles of contract interpretation are well established.  We review de novo issues of contract interpretation.  *Rory v Continental Ins Co*, 473 Mich 457, 464; 703 NW2d 23 (2005).  The goal of contract interpretation is to honor the parties' intent and to enforce the contract's plain terms.  *Davis v LaFontaine Motors, Inc*, 271 Mich App 68, 73; 719 NW2d 890 (2006).  The contract is read as a whole and meaning given to all of its terms.  *Wilkie v Auto-Owners Ins Co*, 469 Mich 41, 50 n 11; 664 NW2d 776 (2003).  That is, every word, phase, and clause must be given effect.  *Klapp v United Ins Group Agency, Inc*, 468 Mich 459, 468; 663 NW2d 447 (2003).  If no reasonable person could dispute the meaning of the contract's plain language, this Court must enforce that plain language as written.  *Rory*, 473 Mich at 468.  The rules that apply to contracts in general also apply to the construction of indemnity contracts.  *Triple E Produce Corp v Mastronardi Produce, Ltd*, 209 Mich App 165, 172; 530 NW2d 772 (1995).  If the language of the indemnity provision is clear and unambiguous, it must be enforced as written.  *Burkhardt v Bailey*, 260 Mich App 636, 656; 680 NW2d 453 (2004).  Like other contracts, an indemnification provision must be construed to effectuate the intentions of the parties to the contract, which is determined by review of the contract language, the situation of the parties, and the circumstances involved in the initiation of the contract.  *Triple E Produce Corp*, 209 Mich App at 172.

## B. CRANBROOK AND DEPADUA CONSTRUCTION CONTRACT DOCUMENTS

The contract documents governing the relationship between Cranbrook and Depadua Construction are titled as follows: (1) AIA Document A102-2007, Standard Form of Agreement Between Owner and Contractor, and (2) AIA Document A201-2007, General Conditions of the Contract for Construction.  Cranbrook was designated as the "Owner," and Depadua Construction was designated as the "Contractor," for the project at Cranbrook Senior Tower.  See AIA Document A102-2007, p 1.  The "Contract Documents" formed the contract for construction between Cranbrook and Depadua Construction and were not to be construed as creating a contractual relationship between the owner, Cranbrook, and any subcontractor or sub-subcontractor.  See AIA Document A201-2007, § 1.1.2, p 10.  But Depadua Construction was permitted to enter into agreements with subcontractors for "[t]hose portions of the Work that the Contractor does not customarily perform with [its] own personnel . . . ."  See AIA Document A102-2007, § 10.1, p 8.  The "Work" was defined as "the construction and services required by the Contract Documents . . . ."  See AIA Document A201-2007, § 1.1.3, p 10.

The indemnification provision provides:

**§ 3.18 INDEMNIFICATION**

§ 3.18.1 To the fullest extent permitted by law the Contractor shall indemnify and hold harmless the Owner, Architect, Architect's consultants, and agents and employees of any of them from and against claims, damages, losses and expenses, including but not limited to attorneys' fees, arising out of or resulting from performance of the Work, provided that such claim, damage, loss or expense is attributable to bodily injury, sickness, disease or death, or to injury to or destruction of tangible property (other than the Work itself), but only to the extent caused by the negligent acts or omissions of the Contractor, a Subcontractor, anyone directly or indirectly employed by them or anyone for whose acts they may be liable, regardless of whether or not such claim, damage, loss or expense is caused in part by a party indemnified hereunder. . . .  [See AIA Document A201-2007, p 18.]

On appeal, Depadua Construction argues that it was not contractually obligated to defend or indemnify Cranbrook with regard to Dobbins's bodily injuries and subsequent death because, first, they did not arise out of or result from performance of the Work, and, second, there was no evidence that Dobbins's injuries and death were caused by negligent acts or omissions of Depadua Construction or a subcontractor. In other words, Depadua Construction argues, for the indemnification clause to be triggered there must be evidence of both a causal link to the work and fault—and there is no evidence of either in this case.

First, we reject Cranbrook's argument on appeal that Depadua Construction had a duty to defend Cranbrook, as well as a duty to indemnify, with regard to the underlying premises liability lawsuit. The indemnification provision in the parties' contract states: "To the fullest extent permitted by law the Contractor shall indemnify and hold harmless the Owner . . . ." No duty to defend was included in the indemnification provision. "Where the parties have contracted to create duties that differ or extend beyond those established by general principles of law, and the terms of the contract are not otherwise unenforceable, the parties must abide by the contractual duties created." *Grand Trunk Western RR, Inc v Auto Warehousing Co*, 262 Mich App 345, 351; 686 NW2d 756 (2004). The duty to defend is not the same as the duty to indemnify. In the context of insurance law, a duty to defend may arise if the allegations of a third party against a policyholder even arguably fall within the terms of the insurance policy coverage. See *American Bumper & Mfg Co v Hartford Fire Ins Co*, 452 Mich 440, 450-451; 550 NW2d 475 (1996). But in other commercial transactions not involving insurance law, whether a duty to defend exists is determined by the language of the parties' contract. *Grand Trunk Western RR, Inc*, 262 Mich App at 353.

Here, the indemnification provision in the parties' contract does not include a duty-to-defend clause; rather, it only created a duty to indemnify—which is a more limited duty than the broader duty to defend. See *Busch v Holmes*, 256 Mich App 4, 9; 662 NW2d 64 (2003). As explained by this Court in *Ajax Paving Indus, Inc v Vanopdenbosch Const Co*, 289 Mich App 639; 797 NW2d 704 (2010), the duty to defend and the duty to indemnify are two concepts that are not interdependent and "relate to distinctly different matters." *Id*. at 649. The duty to defend contemplates a duty to deny, contest, or oppose an allegation or claim while the duty to indemnify "contemplates reimbursement for injuries/losses that have already been incurred." *Id*. It is a well-established principle of "contract law that parties are free to contract as they see fit, and the courts are to enforce the agreement as written . . . ." *Burkhardt*, 260 Mich App at 657 (quotation marks and citation omitted). Accordingly, Cranbrook's argument that Depadua Construction had a duty to defend Cranbrook with regard to the underlying premises liability lawsuit is without merit and the trial court erred in concluding that Depadua Construction had the duty to defend Cranbrook in that regard.

Next, we turn to the issue whether the fact situation is covered by the indemnification provision which "generally requires only a straightforward analysis of the facts and the contract terms." *Grand Trunk Western RR, Inc*, 262 Mich App at 356-357. The indemnification provision provides in relevant part that Depadua Construction, as the contractor, was to indemnify and hold harmless Cranbrook "from and against claims, damages, losses and expenses, including but not limited to attorneys' fees, arising out of or resulting from performance of the Work, provided that such claim, damage, loss or expense is attributable to bodily injury . . . or death . . . , but only to the extent caused by the negligent acts or omissions of the Contractor, a Subcontractor, anyone directly or indirectly employed by them or anyone for whose acts they may be liable[.]"

-10-

Depadua Construction argues, as it did in the trial court, that its duty to indemnify was not triggered because there was no evidence that Dobbins's injuries and death arose out of or resulted from the performance of the Work and, moreover, there was no evidence that such injuries and death were caused by the negligent acts or omissions of Depadua Construction or a subcontractor. While the premises liability lawsuit *alleged* that Dobbins tripped and fell because of a purportedly hazardous condition near the elevator where the Work was being performed, those *allegations* were never proven because the premises liability lawsuit was dismissed. In other words, the fact situation of the underlying claim consists of merely unproven allegations and that is not sufficient to trigger indemnification. The trial court held that the mere allegation of negligence was sufficient to trigger the duty to indemnify because "the contract language would be nonsensical to require that there's a finding of negligence before the requirement to defend is implicated where there is an allegation of negligence." We cannot agree.

First, the trial court erred in concluding that Depadua Construction had a duty to defend, as discussed above. Second, the mere allegation of negligence does not trigger the duty to indemnify, i.e., reimburse for losses, under the plain terms of the parties' contract. Liability was expressly limited by the words "but only to the extent caused by the negligent acts or omissions of the Contractor, a Subcontractor . . . ." As Depadua Construction points out, the indemnification provision at issue in this case does not contain broad language like, for example, the indemnification provision considered in *Fischbach-Natkin Co v Power Process Piping, Inc*, 157 Mich App 448, 450-451; 403 NW2d 569 (1987):

> The Subcontractor [] agrees to and shall indemnify, protect, defend and save harmless [the Contractor] from and against all liability *or claimed liability* for injuries, including death, to any and all persons whomsoever and for any and all property damage arising out of or resulting from or in any way connected with the work covered by this Subcontract or the operations or acts of commission or omission of the Subcontractor, his subcontractors, agents and employees. [Emphasis supplied.]

Similarly, the indemnity provision at issue in *Ajax Paving Indus, Inc*, 289 Mich App at 644-645, provided in relevant part:

> Subcontractor agrees to indemnify [plaintiff] and MDOT and to hold each of them forever harmless from and against all suits, actions, legal or administrative proceedings, claims, demands, damages, judgments, liabilities, interest, attorney's fees, costs and expenses of whatsoever kind or nature whether arising before or after completion of Subcontractor's work and in any manner directly or indirectly caused, occasioned or contributed to, *or claimed to be caused, occasioned or contributed to*, by any act, omission[,] fault or breach of Subcontractor or of anyone acting under its direction, control, or on its behalf in connection with or incidental to the work of Subcontractor and regardless whether directly or indirectly caused, occasioned or contributed to, or *claimed to be caused, occasioned or contributed to* in part by a party indemnified hereunder or by anyone acting under their direction, control, or on their behalf. [Emphasis supplied.]

In contrast, the indemnification provision at issue in this case in more narrowly written; it does not state that it is triggered for "claimed liability," i.e., *allegations* of liability, and the provision in this case requires specific causation via "negligent acts or omissions." Because plaintiff's premises liability lawsuit was dismissed in its entirety without any determination of relevant facts, there is no evidence that plaintiff's allegations were true with regard to how Dobbins fell or that such fall—and related injuries leading to Dobbins's death—was caused by the negligent acts or omissions of Depadua Construction or a subcontractor. "Michigan law provides contracting parties with broad discretion in negotiating the scope of indemnity clauses." *Miller-Davis Co v Ahrens Const, Inc*, 495 Mich 161, 173; 848 NW2d 95 (2014). Simply stated, the scope of the parties' indemnification provision is limited; it does not include a duty to defend and it does not include language requiring indemnification with regard to a cause of action *claiming* or *alleging* that negligent acts or omissions gave rise to bodily injury or death. And because the underlying case was dismissed on, basically, legal grounds, there were no conclusive factual findings triggering the application of the parties' contractual indemnification provision. Accordingly, contrary to the trial court's holding, Depadua Construction was not required to either defend or indemnify Cranbrook with regard to the underlying premises liability case. It follows, then, that Depadua Construction was not required to reimburse Cranbrook for its attorney fees and costs allegedly incurred in defending the underlying premises liability case.

In summary, the trial court erred in granting third-party plaintiff Cranbrook's motion for summary disposition, erred in denying third-party defendant Depadua Construction's motion for summary disposition, and erred in granting Cranbrook's motion for attorney fees and costs. This matter is remanded for entry of an order granting third-party defendant Depadua Construction's motion for summary disposition and dismissing third-party plaintiff Cranbrook's claims against Depadua Construction. The judgment entered in favor of Cranbrook and against Depadua Construction in the amount of $47,346.80 is vacated.

## C. DEPADUA CONSTRUCTION AND SCHINDLER ELEVATOR CONTRACT

Depadua Construction also argues on appeal that the trial court erred in denying its motion for summary disposition as to its cross-claim against Schindler Elevator for contractual indemnity arising from their subcontract agreement; instead, the trial court erroneously held that Depadua Construction must defend and indemnify Schindler Elevator. We disagree with Depadua Construction that Schindler Elevator had a duty to defend and indemnify Depadua Construction arising from their subcontract. But we agree that Depadua Construction was not required to defend and indemnify Schindler Elevator, and thus, was not required to reimburse Schindler Elevator for its attorney fees and costs.

The subcontract agreement between Depadua Construction and Schindler Elevator, dated April 17, 2017, provides in relevant part that Schindler Elevator, as subcontractor, "shall provide all labor, material, tools, equipment, layout, permits and inspection fees necessary for the complete job of elevators including but not necessarily limited to" (1) updates to miscellaneous equipment, cab interior updates, and hydraulic jack replacement. However, under the "Special Conditions" section of the subcontract agreement, special condition number 16 stated: "Extra excavation in the form of well drilling, if necessary, is not included." The supplement attached to the subcontract was titled "Terms and Conditions of the Subcontract Agreement and was labeled "Exhibit A." Paragraph D of that supplement is the indemnification provision which provides:

D.  <u>INDEMNIFICATION</u>.   To the fullest extend [sic] permitted by law, Subcontractor shall protect, defend, indemnify and save harmless Owner and/or the Contractor and their employees or agents from and against all losses, claims, demands, payments, damages, suits, actions, attorneys' fees, recoveries and judgments of every nature and description brought or recovered against the Owner and/or the Contractor in any way connected with work done under this Agreement. Subcontractor shall also indemnify and save harmless Owner and/or the Contractor from and against all losses, claims, demands, payments, damages, suits, actions, attorneys' fees, recoveries and judgments of every nature and description brought or recovered against Owner and/or the Contractor by employees of [sic] agents of Subcontractor, or of Subcontractors of Subcontractor caused or arising in any manner whatsoever, in the course of or in connection with work performed hereunder and regardless of the person of [sic] persons, including the Contractor and Owner, whose act or omission to act, whether negligent or not negligent, causes, results in or contributes to such loss, claim, demand, payments, damages, suit, action, attorneys' fees, recovery of judgment; provided that this indemnity shall not apply to any liability arising from the sole negligence of the Contractor or the Owner, its agents or employees.  This indemnity shall include any fees, expenses or sums spent in compromise of any claim included hereunder.

Paragraph J of that supplement contains miscellaneous provisions and provides in relevant part:

J. <u>MISCELLANEOUS PROVISIONS</u>.

* * *

2. <u>Changes in the Work</u>.  Contractor may, without invalidating this Subcontract or any bond given hereunder, order extra and/or additional work, deletions or other modifications to the Work, such changes to be effective only upon written order of Contractor. . . .

The Subcontractor shall not be entitled to payment for additional work or work that deviates from the plans or specifications if such Work is performed without prior written authorization, in the form of a Construction Change Directive or Change Order, from the Contractor.

Several months later, on September 5, 2017, Schindler Elevator drafted an "Upgrade Order Agreement" addressed to Depadua Construction by which it proposed "to furnish and install . . . Well Drilling for Hydraulic Jack replacement project (Small car only)."  The Upgrade Order Agreement incorporated the proposal of work submitted to Schindler Elevator by its sub-subcontractor, Windy City Drilling, dated August 28, 2017.  In fact pages two and three of the Upgrade Order Agreement are almost identical to Windy City's proposal and reference the relationship between Windy City and Schindler Elevator as its "customer."  Section 14 of Windy City's Proposal to Schindler Elevator included an integration clause which stated: "This proposal contains the entire understanding of the parties with respect to the subject matter of this Proposal. This Proposal supercedes [sic] all prior agreements and understandings between the parties with

respect to its subject matter. This Proposal may be amended only by a written instrument duly executed by all of the parties or their successors or assigns."

This identical integration clause (with typographical error) was included in the Upgrade Order Agreement Schindler Elevator addressed to Depadua Construction. Nevertheless, Depadua Construction's President/Manager, Scott A. Larry, executed the Upgrade Order Agreement indicating his approval and acceptance of this Agreement, which included this integration clause that applied to the subject-matter of well-drilling work. And because well-drilling work was specifically excluded in special condition number 16 of the parties' subcontract agreement, there was no other conflicting, applicable integration clause that applied to the well-drilling work sub-subcontracted by Schindler Elevator to Windy City Drilling. But we reject Schindler Elevator's contention that the integration clause in the Upgrade Order Agreement had the effect of invalidating the entirety of the subcontract agreement between Depadua Construction and Schindler Elevator; rather, that integration clause only applied as to the well-drilling work described in the Upgrade Order Agreement.

And we disagree with Depadua Construction that the Upgrade Order Agreement was a change order—common in construction projects—which expanded the scope of work covered by the subcontract consistent with Paragraph J, Section 2 titled "Changes in the Work." First, well-drilling work had been specifically excluded in the parties' subcontract agreement. Second, this separate agreement between Depadua Construction and Schindler Elevator was titled "Upgrade Order *Agreement*" and not "Construction Change Directive" or "Change Order," as termed in Paragraph J, Section 2 (Changes-in-the-Work provision) of the parties' original subcontract agreement. Third, this Upgrade Order Agreement was not a typical or customary change order in that it was not formatted like a typical change order; rather, it set forth additional terms and conditions that were applicable with respect to the well-drilling work—and it included the integration clause discussed above.

Apparently, Schindler Elevator was willing to subcontract the required well-drilling work to Windy City Drilling, but only if additional terms and conditions were agreed to by Depadua Construction with respect to the well-drilling work. There were nine additional terms and conditions that Depadua Construction agreed to as the "purchaser" of those services. At issue here is the eighth term and condition:

> 8. Purchaser agrees to defend, indemnify and hold Schindler harmless from and against any claims, lawsuits, demands, judgments, damages, costs and expenses arising out of this Agreement except to the extent caused by or resulting from the sole and direct fault of Schindler.

This indemnification provision applied only with respect to the well-drilling work to be performed by Windy City Drilling; it did not apply to the scope of work set forth in the original subcontract agreement between Depadua Construction and Schindler Elevator. While unusual, again, Depadua Construction's President/Manager, Scott A. Larry, executed the Upgrade Order Agreement indicating his approval and acceptance of this Agreement which stated that the "terms and conditions are incorporated herein by reference." See *Triple E Produce Corp*, 209 Mich App at 172 (the intent of the contracting parties is determined by the contract's plain language). We reiterate: It is a well-established principle of "contract law that parties are free to contract as they

see fit, and the courts are to enforce the agreement as written . . . ." *Burkhardt*, 260 Mich App at 657 (quotation marks and citation omitted). Likewise, our Supreme Court has stated that "competent persons shall have the utmost liberty of contracting and that their agreements voluntarily and fairly made shall be held valid and enforced in the courts." *Terrien v Zwit*, 467 Mich 56, 71; 648 NW2d 602 (2002) (quotation marks and citation omitted). Accordingly, contrary to Depadua Construction's cross-claim, Schindler Elevator had no duty to defend and indemnify Depadua Construction against claims allegedly arising from well-drilling work. The original subcontract between the parties did not apply to well-drilling work; rather, the Upgrade Order Agreement only applied to well-drilling work and by that Agreement, Depadua Construction agreed to defend and indemnify Schindler Elevator from claims arising from well-drilling work.

The issue remains, however, whether Depadua Construction was charged with any duties under that indemnification provision set forth in the Upgrade Order Agreement with respect to the underlying premises liability lawsuit. Duties to defend, indemnify, and hold Schindler Elevator harmless are owed only if the claim, lawsuit, demand, judgment, damages, costs, and expenses arose out of the well-drilling Upgrade Order Agreement. And, as discussed above, because plaintiff's premises liability lawsuit was dismissed in its entirety without any determination of relevant facts, there is no evidence as to how Dobbins fell or that such fall—and related injuries leading to Dobbins's death—was caused by or related in any way to the well-drilling work described in the Upgrade Order Agreement. Although the underlying premises liability complaint alleged that Dobbins tripped and fell "over the electrical cord/cardboard, mat combination" located in front of the elevator, there was no evidence establishing which entity, if any, placed those items—or even that those items were indeed located by the elevator. In other words, there is no evidence that the well-drilling work or that Windy City Drilling was responsible for creating the hazardous condition that allegedly existed. And there is no evidence establishing that Dobbins did, in fact, trip and fall as a consequence of those items—as opposed to falling for some other reason not related to the construction work. Therefore, contrary to the trial court's holding, Depadua Construction had no duty under the indemnification provision of the Upgrade Order Agreement "to defend, indemnify and hold Schindler harmless" with regard to the underlying premises liability action. It follows, then, that Depadua Construction was not required to reimburse Schindler Elevator for its attorney fees and costs allegedly incurred in defending the underlying premises liability case.

In summary, the trial court did not err in denying cross-plaintiff Depadua Construction's motion for summary disposition as to its cross-claim against cross-defendant Schindler Elevator because their subcontract agreement did not require Schindler Elevator to defend and indemnify Depadua Construction with regard to the underlying premises liability case. But the trial court erred in ordering Depadua Construction to defend and indemnify Schindler Elevator with regard to the premises liability case, and also erred in granting Schindler Elevator's motion for attorney fees and costs. We affirm the denial of cross-plaintiff Depadua Construction's motion for summary disposition as to Schindler Elevator, reverse the order requiring Depadua Construction to defend and indemnify Schindler Elevator, and remand for entry of an order denying Schindler Elevator's motion for attorney fees and costs.

The judgment entered in favor of Cranbrook and against Depadua Construction in the amount of $47,346.80 is vacated. The judgment entered in favor of Schindler Elevator and against Depadua Construction in the amount of $36,021.90 is vacated.

Reversed in part, affirmed in part, judgments vacated, and remanded for proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Mark J. Cavanagh
/s/ Deborah A. Servitto
/s/ Kristina Robinson Garrett